No. 100,554

## In the Matter of the Adoption of B.B.M.

(224 P.3d 1168)

Opinion filed February 26, 2010.

*Aaron C. McKee,* of McKee & Ireland, L.L.C., of Lenexa, argued the cause, and *Kimberly J. Ireland,* of the same firm, was with him on the briefs for appellant father.

*Martin W. Bauer,* of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, argued the cause, and *Teresa L. Mah,* of the same firm, was with him on the briefs for appellees adoptive parents.

The opinion of the court was delivered by

BEIER, J.: On this petition for review, adoptive parents challenge a Court of Appeals majority opinion overturning termination of a

natural father's parental rights as to B.B.M., a minor child. We address the allocation of the burden of proof, application of the law to the facts of record, and the propriety of consideration of the best interests of the child.

In August 2006, natural mother (Mother) separated from her husband and began a relationship with natural father (Father). Mother and Father lived together from August to November 2006. They realized Mother was pregnant with B.B.M. in September.

In early November, Mother moved out of the apartment she shared with Father and into a new place with a friend. In January 2007, she began living with her husband again.

B.B.M. was born on June 13, 2007. One day later, adoptive parents filed a petition seeking temporary custody of B.B.M., adoption, and termination of Father's parental rights. They alleged, under K.S.A. 59-2136(h), that Father was unfit and that he failed without reasonable cause to support Mother for the 6 months leading up to B.B.M.'s birth. See K.S.A. 2009 Supp. 59-2136(h)(1)(D). A district court order giving adoptive parents temporary custody of B.B.M. was entered June 15, 2007; adoptive parents reside in New Jersey.

At trial adoptive parents sought termination of Father's rights solely on the basis of K.S.A. 2009 Supp. 59-2136(h)(1(D). The parties, in essence, do not dispute that Father failed to provide any significant financial support to Mother during the last 6 months of her pregnancy with B.B.M. They disagree over whether reasonable cause justified Father's behavior.

The district judge initially ruled in Father's favor, finding Mother's interference constituted reasonable cause for Father's failure to support. The judge found that Mother did not want or need Father's help and that she was receiving money from adoptive parents during the pregnancy. Mother began communicating with adoptive parents in September or October 2006 and talked to adoptive mother frequently thereafter. Mother was questioned during trial about whether she signed an affidavit showing adoptive parents paid some expenses, but she did not know. No such affidavit appears in the record on appeal.

Father testified that he offered to give Mother cash on several occasions, but she refused it. He also testified he offered to pay her cell phone bill, because it was the only way he could maintain contact; but she refused to accept this help.

The district judge also found that Mother's husband, a "cage fighter," threatened Father, apparently relaying the threats through Mother. At one point, Father had the assistance of police when he helped a friend retrieve a truck from Mother's home because he believed Mother's husband would kill him. Father also testified the husband took Mother's cell phone so that Father could not call her.

Specifically, the district judge made the following findings from the bench: (1) Mother lived with her husband from January 2007 to June 13, 2007, that is, 5 of the 6 months at issue; (2) Mother lived a "nomadic lifestyle" during this time; (3) Father was "not flush in any respect but at the same time [the court did] not perceive that he was a laggard necessarily"; (4) Father worked for United Parcel Service at some point and quit for an unknown reason; and (5) Father purchased minor items of no monetary consequence and food on three occasions, but these events were "more social than . . . support."

At the conclusion of the termination hearing, the district judge held that adoptive parents had not sustained their burden of proof by clear and convincing evidence.

On January 8, 2008, the district judge filed his written order. The written order included the following factual findings: (1) Mother began considering adoption in October 2006—during her second month of pregnancy—and she may have begun communicating with adoptive parents in October also; (2) Father offered to support the Mother, and it was refused; (3) "After they ceased living together and while she briefly occupied her own apartment," Father made Mother breakfast and provided transportation; (4) Father bought a few meals and some inexpensive items at a thrift store; and (5) Father did not pay any medical expenses. The district judge also vacated the temporary custody order.

On January 22, 2008, adoptive parents filed an amended petition/motion to alter or amend the judgment or for a new trial,

alleging erroneous conclusions of law regarding Mother's interference and failure to address the best interests of B.B.M., as permitted under K.S.A. 2009 Supp. 59-2136(h)(2)(A).

On February 25, 2008, Father filed a response to adoptive parents' motion and sought an order requiring adoptive parents to surrender custody of B.B.M. Adoptive parents then sought a stay of the district judge's January 8 order until a decision on the motion to alter or amend.

At a March 6, 2008, hearing on the motion to alter or amend, the district judge affirmed his January 8 order and made additional fact findings about a hostile environment in Mother's home during the relevant 6-month period. Citing Father's testimony, the judge found Mother's husband made threats to Father, and Father attempted to avoid interacting with the husband. The district judge also stated that he would not consider the best interests of the child because such interests had not been pleaded or argued, and no evidence had been presented on the issue.

Five days later, apparently *sua sponte*, the district judge reversed himself, terminating Father's parental rights and reinstating the temporary custody order. The judge's supplemental Memorandum Decision and Rulings read in part:

"After further consideration of the factual background of the relationship of [Father and Mother] and his below poverty level situation in 2006 and the relevant period of 2007 during [Mother's] pregnancy, [Father] did not have the financial ability to support her regardless of how intimidating her cage fighter husband was. Before interference with or refusal of [Father's] payment of support to [Mother] is a defense under K.S.A. [2009 Supp.] 59-2136 (h)[(1)(D)], it seems reasonable that he demonstrate his financial ability to do so. The court characterized such expenditures as he made for her benefit as, "social and not focused on [Mother's] pregnancy.

"The court's emphasis on the interference factor as affecting the putative Father's opportunity to contribute support to [Mother] during the last six months of her pregnancy has been misplaced and the citation of *In re K.D.O.*, 20 Kan. App. 2d 559 (1995), as controlling authority for its ruling that [adoptive parents] failed to prove with clear and convincing evidence that [Father] failed without reasonable cause to provide support for [Mother] was erroneous. The instructive admonitions of [Judge, now] Justice Beier [in] *In re Adoption of M.K.D.*, 30 Kan. App. 2d 1176, 1182 (2002), are applicable to [Father] and his failure to timely act to protect his claim of paternity for B.B.M."

On Father's appeal, the majority of the panel from our Court of Appeals reversed. *In re Adoption of B.B.M.*, No. 100,554, unpublished opinion filed May 1, 2009. The majority endorsed the district judge's authority to reconsider his March 6, 2008, oral ruling under K.S.A. 59-2213 but disagreed on whether clear and convincing evidence supported termination of Father's parental rights. In the majority's view, a rational factfinder could have found it highly probable that Father failed to provide financial support during the relevant time period and that Mother interfered with his attempts to do otherwise. Slip op. at 9, 11. But the majority believed the district judge's determination that Father's failure was caused by his financial inability was unsupported by the record. Slip op. at 12, 14. It concluded that adoptive parents failed to carry their burden under K.S.A. 2009 Supp. 59-2136(h)(1)(D). Slip op. at 19.

Court of Appeals Judge Patrick B. McAnany dissented. He agreed with the majority's threshold determination that the statute always allocated the burden of proof to adoptive parents, but he concluded that the district judge did not improperly shift the burden to Father. Slip op. at 20 (McAnany, J., dissenting). He would have held, "based on the totality of the evidence presented on the issue of support," that substantial evidence supported the district judge's decision to terminate Father's parental rights. Slip op. at 20.

### ALLOCATION OF BURDEN OF PROOF

The allocation of the burden of proof in the proceeding before us is dependent upon statutory interpretation. Statutory interpretation raises a question of law over which appellate review is unlimited. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271, 202 P.3d 7 (2009). When interpreting a statute, an appellate court must first determine the legislature's intent by reviewing the statutory language used and giving ordinary words their ordinary meaning. *Double M Constr.*, 288 Kan. at 271. " '[O]nly if the statute's language or text is unclear or ambiguous [do] we move to the next analytical step, applying canons of construction or relying on legislative history construing the statute to effect the legislature's intent." *Double M Constr.*, 288 Kan. at 271-72 (quoting

*In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007), *cert. denied* 555 U.S. 937 (2008).

The statute at issue, K.S.A. 2009 Supp. 59-2136(h)(1)(D), provides in pertinent part:

> "When a father or alleged father appears and asserts parental rights, the court shall determine parentage, if necessary pursuant to the Kansas parentage act. . . . [T]he court may order that parental rights be terminated, upon a finding by clear and convincing evidence, of any of the following:
>
> . . . .
>
> "(D) the father, after having knowledge of the pregnancy, failed without reasonable cause to provide support for the mother during the six months prior to the child's birth."

Adoptive parents concede that they bear an initial burden to come forward with evidence under this language, which requires them to show that Father failed to provide anything beyond negligible financial support to Mother. They nevertheless argue that the panel majority erred in requiring them to prove an impossible further negative, *i.e.*, that Father lacked reasonable cause for his failure to support. In their view, once they demonstrated Father's failure to support Mother, Father was responsible for coming forward with evidence to demonstrate reasonable cause for that failure, in this case, Mother's interference. Adoptive parents cite *In re Adoption of Baby Boy B.*, 254 Kan. 454, 866 P.2d 1029 (1994), to support their burden of proof allocation argument, asserting that this court has treated maternal interference as a father's defense to such a termination action rather than a part of a petitioner's case-in-chief.

It appears that adoptive parents overread our *Baby Boy B.* decision. In that case, the district court had held that a father provided sufficient support to a mother during the 6 months before the birth of their child under the prior version of the statute—K.S.A. 59-2136(h)(4). The Court of Appeals and this court affirmed the district court's refusal to terminate the father's parental rights. See *Baby Boy B.*, 254 Kan. at 456-65.

In particular, we ruled on the question of whether substantial competent evidence supported the district court's finding that the amount of support was adequate under all of the relevant circum-

stances. The evidence showed that, although the mother had accepted certain financial contributions of the father, she had refused a particular offer because she believed it to be conditioned on her abandonment of a plan to have their baby adopted. Our discussion and holding do not mention allocation of the burden of proof on this point, which was not in issue before us. See *Baby Boy B.*, 254 Kan. at 456-65.

The situation is likewise in the two Court of Appeals cases relied upon by adoptive parents: *In re Adoption of Baby Boy S.*, 22 Kan. App. 2d 119, 129-34, 912 P.2d 761, *rev. denied* 260 Kan. 993, *cert. denied* 519 U.S. 870 (1996) (holding no reasonable cause for failure to support); and *In re Baby Boy N.*, 19 Kan. App. 2d 574, 585-89, 874 P.2d 680, *cert. denied* 513 U.S. 1018 (1994) (same).

In *Baby Boy S.*, the Court of Appeals affirmed the district court's termination of a father's parental rights for failure to support the mother without reasonable cause during the last 6 months of her pregnancy. 22 Kan. App. 2d at 129-34. The mother and father had a tumultuous relationship, which ended when the mother moved out of their shared out-of-state residence. Although the father was aware of his baby's due date and had limited information on the mother's whereabouts and her plan to pursue adoption, he made no effort to contribute financially. The Court of Appeals recited the substantial competent evidence standard and the requirement that all relevant circumstances be considered by the district court. It stated that the father had argued his failure to support was justified by his reliance on advice of counsel and by the mother's lack of both financial need and a lasting romantic interest in him. It did not, however, discuss the appropriate allocation of the burden of proof on any such justification. See *Baby Boy S.*, 22 Kan. App. 2d at 129-34.

In *Baby Boy N.*, the Court of Appeals stated that reasonable cause for a failure to support is a question of fact to be determined under all the circumstances, but, again, it did not speak to the burden of proof. It affirmed the district court's decision to terminate a father's parental rights under a substantial competent evidence standard, rejecting the father's argument that the mother's threat to disappear and her lack of financial need, as well as inac-

curate legal advice, excused his failure to provide support. See *Baby Boy N.*, 19 Kan. App. 2d at 585-89.

Without controlling case law answering the specific burden allocation issue before us, we turn to our statutory interpretation lodestar—the plain language of the governing provision, K.S.A. 2009 Supp. 59-2136(h)(1)(D). In it, we see no indication that the existence of reasonable cause to excuse a father's failure to provide support during the last 6 months of a mother's pregnancy is to be treated any differently than any other component of the case. As we have recently reinforced, a petitioner in such a case bears the burden of proving by clear and convincing evidence that termination of parental rights is appropriate. See *In re Adoption of A.A.T.*, 287 Kan. 590, 625-26, 196 P.3d 1180 (2008), *cert. denied* 173 L. Ed. 2d 1088 (2009). If the alleged ground for termination is K.S.A. 2009 Supp. 59-2136(h)(1)(D)—that the father "failed without reasonable cause to provide support" for the mother during the last 6 months of her pregnancy—then the burden includes meeting the unsurprising possibility that a father may argue that any failure on his part was justified by a mother's interference. This process does not require a petitioner to demonstrate irrefutably an impossible negative; it requires only that the petitioner do what is ordinary for a party who bears a clear and convincing burden of proof, *i.e.*, show that his or her version of the facts is highly probable. See *In re B.D.-Y.*, 286 Kan. 686, 690-98, 187 P.3d 594 (2008). This showing, to be successful, often must anticipate the argument of the opponent and undercut it with contrary evidence. This certainly is not asking too much of a party who wishes to terminate what may ripen into a natural father's fundamental right to care, custody, and control of his child. See *A.A.T.*, 287 Kan. at 600-12; *In re Adoption of B.M.W.*, 268 Kan. 871, 881, 2 P.3d 159 (2000).

We also know, from a comparison to K.S.A. 2009 Supp. 38-2271 in the Revised Kansas Code for Care of Children, that the legislature knows how to delineate a different allocation of the burden of proof in a similar situation if it desires to do so. K.S.A. 2009 Supp. 38-2271 provides in pertinent part:

"(a) It is presumed . . . that a parent is unfit by reason of conduct or condition which renders the parent unable to fully care for a child, if the state establishes, by clear and convincing evidence, that:

. . . .

(10) a father, after having knowledge of the pregnancy, failed without reasonable cause to provide support for the mother during the six months prior to the child's birth;

. . . .

"(b) The burden of proof is on the parent to rebut the presumption of unfitness by a preponderance of the evidence."

Requiring petitioners under K.S.A. 2009 Supp. 59-2136(h)(1)(D) to prove by clear and convincing evidence all elements included in the statutory subsection under which they seek to terminate a natural father's parental rights also is consistent with Kansas' historical adherence to the parental preference doctrine. See *A.A.T.*, 287 Kan. at 661 (Beier, J., dissenting). "Generally speaking, adoption statutes are strictly construed in favor of maintaining the rights of natural parents in those cases where it is claimed that, by reason of a parent's failure to fulfill parental obligations as prescribed by statute, consent to the adoption is not required." *B.M.W.*, 268 Kan. at 881-82.

### EVALUATION OF EVIDENCE

Having established the statutory allocation of the burden of proof in this action, we turn now to the outcome dictated by the evidence in the record and the procedural history recited above. Termination of parental rights will be upheld by an appellate court if, after reviewing all the evidence in the light most favorable to the prevailing party, the district judge's fact findings are deemed highly probable, *i.e.*, supported by clear and convincing evidence. See *B.D.-Y.*, 286 Kan. at 697. An appellate court should not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *B.D.-Y.*, 286 Kan. at 705.

In this case, it is fair to describe the findings of fact made by the district judge as evolving, perhaps ever expanding. Until he reversed himself, the judge regarded the facts as insufficient to support termination of Father's rights. Then, rather suddenly, the judge ruled that his perception of Father's inability to support Mother in her last 6 months of pregnancy must be his paramount consideration. Regardless of whether the judge actually shifted the burden of proof to Father, he was legally incorrect when he char-

acterized a mother's interference as a "defense" to an allegation of a father's failure to support, and when he appeared to require a father to demonstrate financial wherewithal before such interference could have any legal ramifications. In fact, all of the relevant surrounding circumstances are to be considered in an action based on K.S.A. 2009 Supp. 59-2136(h)(1)(D). See *Baby Boy B.*, 254 Kan. 454, Syl. ¶ 4. And Judge McAnany accurately stated in his Court of Appeals dissent that mere poverty alone would be an insufficient basis for termination under that provision. See *B.B.M.*, slip op. at 24-25.

There is precious little evidence in the record as it now exists on Father's ability to pay during the relevant 6-month period before B.B.M.'s birth on June 13, 2007. Most of the facts recited by the district judge in his final ruling—Mother's payment of Father's rent in July, August, and September 2006; her support of herself and her children through public assistance; Father's $964 income on his 2006 tax return; Father's failure to support Mother during the time they lived together; Father's failure to support her in 2007— have no bearing on the critical 6-month window of time. Those pieces of evidence that do have bearing on that period do not constitute clear and convincing proof of either inability or unwillingness to pay, and they do nothing to undercut the district judge's previous repeated findings about the effect of Mother's interference on Father's effort to provide timely support.

Under these circumstances, we are compelled to reverse both the district court and the Court of Appeals. The district court's ultimate decision rests upon inconsistent fact findings and misstatement of the governing law. Neither the Court of Appeals nor this court is in a position to correct these errors without further fact finding and reevaluation in the district court. Although it is regrettable to delay final resolution of this matter, remand for retrial in the district court under the appropriate legal standards is unavoidable.

## BEST INTERESTS OF THE CHILD

Before remand to the district court, one additional question requires our attention: What role should the "best interests of the

child" have in this decision regarding whether to terminate Father's parental rights?

In 2006, the legislature amended the governing statute to add "best interests of the child" as an optional consideration in such cases. See K.S.A. 2009 Supp. 59-2136(h)(2)(A).

The district judge in this case expressly refused to consider the best interests of B.B.M. in his decision because, he said, adoptive parents had not included any discussion of the best interests of B.B.M. in their pleadings and had put on no evidence to support such an argument. Before the Court of Appeals and before this court, adoptive parents attempted to overcome any real or perceived deficiency in their preservation of their "best interests" issue by asserting that the district judge nevertheless adequately analyzed "the best interests of the child" by acknowledging the inevitable hardship that would arise if B.B.M. is ultimately removed from his adoptive parents' home.

We do not regard the district judge's vague reference to taking "no comfort at all" from the prospect of such removal to be a "best interests of the child" analysis, and we therefore would not address the merits of the argument on appeal. However, we do hold that the district judge erred in requiring specific pleading and direct evidence on this factor before being willing to consider it. The statute places no such demands on the parties to this case. On remand, adoptive parents and Father are free, as contemplated by K.S.A. 2009 Supp. 59-2136(h)(2)(A), to put on direct or circumstantial evidence of B.B.M.'s best interests and to argue their respective positions on which way those interests cut in the district court's weighing of all the relevant circumstances bearing upon the issues of the proposed termination of Father's parental rights and the proposed adoption of B.B.M.

Reversed and remanded with directions to the district court for further proceedings consistent with the foregoing opinion.