NOT DESIGNATED FOR PUBLICATION

No. 114,171

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of:

D.R.H., year of birth 2008, male,

and

A.M.H., year of birth 2009, female.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed May 13, 2016.
Affirmed.

*Richard L. Dickson*, of Wichita, for appellant natural mother.

*Julie A. Koon*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before HILL, P.J., PIERRON and GARDNER, JJ.

*Per Curiam*:  M.M.V. appeals the Sedgwick County District Court's order terminating her parental rights to her son and daughter. She contends that the district court's findings that she was unfit to parent and that her condition was unlikely to change for the foreseeable future were not supported by clear and convincing evidence. We hold that Mother has exhibited a pattern of placing her interests above those of her children and depending on others to assist her to care for her children. While Mother has made some important steps toward getting her life on track, her overall performance on the case plan goals was poor. Under the circumstances, the district court did not err in concluding

1

that termination of Mother's parental rights was in the best interests of the children. We affirm.

Mother has a long history of drug use. She began using marijuana at age 11, which developed into regular use. She has also experimented with cocaine and methamphetamine. She had her first child at the age of 15 and relinquished her rights to the child and placed her for adoption. Mother soon became romantically involved with another young man and gave birth to the two children that are the subject of this appeal. The father of the children began drinking heavily, and Mother left him. The father later died in a car accident.

Mother also became involved with a third man and had a child with him. Though Mother reportedly ended the relationship with his father because of his alcohol abuse, he has remained in his father's custody.

After the death of D.R.H. and A.M.H.'s father, Mother sank into a depression and began heavily using drugs. She eventually lost her house and moved in with some friends, Donald and Sharmae Keith. Mother would frequently leave her children in the care of others for weeks or months at a time. During these times, the children's caretakers frequently would not have any means of contacting Mother. Mother's therapist, Connie Mayes, attributed this conduct to Mother's dependent personality disorder, which made Mother tremendously sensitive to criticism. Mother would avoid the criticism by hanging out with people who did not know her well enough to offer criticism.

In April 2014, Mother became uncomfortable with the Keiths' continued care of her children. She arranged to take her children to the park and never brought them back. Instead, she took the children to another friend's house (Stefani), intending to give her guardianship of the children. On April 13, 2014, Donald Keith learned where the children were staying and went to Stefani's residence. Stefani refused to return the children to

Donald, and the ensuing argument brought the police. Since neither of the parties had legal custody of the children and Mother could not physically meet with the police, the children were taken into protective custody.

Based upon these circumstances, the State filed a child in need of care petition. The court held a temporary custody hearing. Mother appeared by counsel. Consequently, the court found the children in need of care by default. The court ordered continued temporary custody with the Department for Children and Families in out-of-home placement. The court ordered Mother to:

- Refrain from using illegal drugs and to avoid alcohol abuse;
- obtain a clinical interview and assessment;
- complete a nutrition and food education program (EFNEP);
- complete parenting classes;
- submit to hair-follicle and urinalysis (UA) testing and to obtain a substance abuse evaluation if she fails one of the tests;
- obtain and maintain full-time employment;
- maintain appropriate housing; and
- attend supervised visitation with her children.

Mother again failed to appear for the CINC adjudication. She was found in default, and the children were adjudicated in need of care in her absence. The court continued the orders imposed in its temporary custody determination.

Mother has made extremely slow progress on the court orders. She first contacted Saint Francis Community Services, the DCF service provider, on May 12, 2014. She attended her first visit with the children on May 16, 2014. Saint Francis could not schedule an earlier visit because Mother's whereabouts were unknown until Mother

contacted Saint Francis. Shortly after initiating contact with Saint Francis, Mother told her case manager that she intended to relinquish her parental rights but wished to maintain contact with her children until that point. Her attendance at visitations was initially poor, but, by mid-October 2014, she had begun to attend visitations regularly. The social worker who supervised the visitations did not note any substantial improprieties, though Mother frequently indulged the children's demands for candy and demonstrated difficulty directing the children.

Mother obtained a clinical interview and assessment with Mayes on August 22, 2014. Mayes did not observe symptoms of a mental health illness during the interview and did not include mandated therapy in her recommendations. Mayes, however, encouraged Mother to seek individual therapy to address her inability to manage her emotions in a constructive manner. On October 8, Mother's social worker advised her to obtain individual therapy due to the unstable nature of her relationship with the Keiths. Mother sought individual therapy in November 2014, but her sporadic attendance prevented Mayes from developing therapy goals until March 2015. At a session on March 30, the day before the termination hearing, Mayes diagnosed Mother with dependent personality disorder and identified some therapy goals.

Mother completed a parenting class with Associate Word of Life Church on October 22, 2014, but she was dismissed from the EFNEP program for poor attendance and never completed another program. She also went to Higher Ground for a substance abuse assessment on August 21, 2014. Since she denied any drug use, the assessment recommended no treatment. Later, the clinical coordinator for Higher Ground learned of recent drug charges against Mother and contacted her, but Mother continued to deny any drug use. On October 15, 2014, Mother contacted Higher Ground for another assessment, admitting that she had not been honest in her initial assessment. This second assessment recommended outpatient treatment. But on December 11, 2014, Mother was dismissed from the treatment program for poor attendance. Mother did not attend another drug

4

treatment program until January 28, 2015. In her new treatment program at A Clear Direction, Mother continued to demonstrate poor participation. Mother missed several scheduled UA appointments and provided a dirty UA at least once.

In November 2014, Mother reported employment with Kendall Automotive, but she failed to provide documentation of her employment to her social workers.

Mother did not obtain appropriate housing until November 1, 2014, and then only by entering a lease with Donald Keith. Donald Keith had left his wife of 14 years to pursue a relationship with Mother, but at the time of the termination hearing, he had not yet filed divorce papers. A social worker visited the residence on December 26, 2014, and deemed the residence appropriate for the children.

On December 8, 2014, the State filed a motion for a finding of unfitness and termination of parental rights. The court heard testimony and ruled from the bench on April 6, 2015. The court concluded that Mother was unfit to parent her children and that the circumstances were not likely to change in the foreseeable future when viewed from the perspective of the children. The court believed it was in the children's best interests to have the permanency that termination of Mother's parental rights would provide. The court journalized its ruling in an order filed on May 5, 2015.

Once a child is adjudicated a child in need of care, a court may terminate parental rights when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future. K.S.A. 2015 Supp. 38-2269(a). In considering a parent's fitness, the district court is statutorily required to consider a number of factors but is not limited to consideration only of those factors. See K.S.A. 2015 Supp. 38-2269(b). A single factor may establish a parent's unfitness, but the presence of a factor does not automatically establish unfitness. See

5

K.S.A. 2015 Supp. 38-2269(f). If the court concludes that a parent is unfit, the court must consider the physical, mental, and emotional health of the child or children in determining whether termination of parental rights is in the child's or children's best interests. K.S.A. 2015 Supp. 38-2269(g)(1).

In this case, the district court relied on four statutory factors in concluding that Mother was unfit: (1) her long-term use of illegal drugs, K.S.A. 2015 Supp. 38-2269(b)(3); (2) the inability of reasonable efforts by social service agencies to rehabilitate the family, K.S.A. 2015 Supp. 38-2269(b)(7); (3) Mother's lack of effort to adjust her circumstances, conduct, or conditions to meet the needs of her children, K.S.A. 2015 Supp. 38-2269(b)(8); and (4) Mother's failure to carry out a reasonable plan approved by the court directed toward reintegration of the family, K.S.A. 2015 Supp. 38-2269(c)(3).

Mother does not really dispute the evidence demonstrating her lack of fitness to parent but argues that the evidence supporting the district court's conclusion that her condition was unlikely to change in the foreseeable future was insufficient.

When the sufficiency of the evidence supporting a decision regarding the termination of parental rights is challenged, an appellate court will uphold the decision only if, after reviewing the evidence in the record in a light most favorable to the prevailing party, the district court's findings are supported by clear and convincing evidence or, stated another way, the appellate court is persuaded that a rational factfinder could have found it highly probable that the circumstances support the termination of parental rights. In evaluating the evidence, the appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or determine factual questions. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014).

In concluding that Mother was unfit to parent her children, the district court relied heavily on Mother's history of dependence upon others to parent her children. Mother's relinquishment of her parental duties throughout the children's lives is well documented. Documentary evidence and testimony from the social service workers in the case suggest that Mother has always relied on others to parent her children. While Mother challenged the characterization of her parenting, she provided no material challenge to the facts. She lived with D.R.H. and A.M.H.'s natural father for the first few years of their lives. After leaving him, she became involved with another man, whom she lived with for approximately 2 years. Then she admitted that she lived with the Keiths for 1 1/2 years. Simple math indicates that she was living with other people and obtaining assistance with her parenting for approximately 6 of the 6-7 years from when the children were born.

Furthermore, Mother's trial testimony is not consistent with other information in the record, some of which ostensibly involved Mother's statements to social workers or therapists about her past. The children's paternal grandmother testified that Mother left the children with her for an additional 8-9 months from 2010 to 2011, which was before Mother lived with the Keiths. Even Donald Keith testified that after Mother took the children out of the Keiths' home, she continued to seek financial assistance from him. The case manager observed no time during the pendency of the case when Mother demonstrated an ability to parent her children without assistance.

Mother's inability to parent the children alone raises concerns because her sole support rests with Donald Keith. She has no reliable family support network in the area, and she admitted that she had no backup plan if her relationship with Donald Keith ended. Mayes summarized her perception of Mother's dependency by stating, "[M.M.V.] has not been fully functioning since she was about ten years old or before that." Mayes attributed Mother's dependency to dependent personality disorder and indicated that it would be 3 months of regular and consistent therapy before she could even provide a good prognosis for Mother's eventual reintegration with her children. Even if

7

reintegration would be possible at some point in the future, Mayes noted that Mother would need additional individual therapy, successful drug and alcohol treatment, and family therapy. The children's therapist could not state when the children would be ready to engage in family therapy.

Mother recognized and conceded her present inability to parent her children by testifying that she realized she needed to help herself before she could help her children. But only in the few weeks leading up to the termination hearing has Mother's realization manifested itself through action. Her attendance at therapy sessions, her willingness to submit to drug testing, and her attendance at substance abuse outpatient treatment has been dismal throughout the case, including her performance after the State served her with its motion to terminate parental rights. During her testimony at the hearing, Mother admitted that she was using methamphetamine when the children were taken from her care in April 2014 and that she has continued to use drugs while the children were in out-of-home placement. Nevertheless, instead of seeking the assistance offered her to conquer her addiction, she lied to her counselors and therapist about her drug use. Mother's drug treatment counselor at A Clear Direction indicated that Mother needed to attend treatment sessions consistently for a minimum of 8 weeks before a recommendation could be made regarding the necessity of further treatment.

The record clearly demonstrates that the social service agencies made themselves available to assist Mother to complete her case plan objectives. The case manager met with Mother early in the case and assisted Mother in drafting the case plan objectives and tasks and setting specific dates for the completion of those tasks. After they had formed the case plan tasks, the case manager provided Mother with information on available resources to enable her to meet those case plan objectives. The case manager could not refer Mother to service providers until Mother communicated her choice of provider. The case manager indicated that Mother seemed to understand what was required of her but she failed to follow through. The record of Mother's conduct throughout the case supports

the case manager's assessment. Mother clearly knew how to contact her service providers but demonstrated no urgency in completing her case plan tasks.

Parenting is not a whimsical pursuit that a person may enter as the fancy takes them. It requires the parent's consistent presence in the lives of their children. Mother has a history of leaving her children to the care of others to pursue her own interests. Even after her children were removed from her custody, Mother made no substantial efforts to comply with the court orders that would ensure her reintegration with the children. While Mother demonstrated fairly appropriate parenting skills during visitation, this 1-hour-per-week exercise was insufficient to overcome her unwillingness to engage in the tasks required to obtain longer visitation and ultimate reintegration.

In the months preceding the termination hearing, Mother made a much more concerted effort to comply with the reintegration tasks. To the extent this progress shows a change in Mother's attitude, the progress did not persist for a significant duration to signal a permanent change in attitude. The social workers and therapists have uniformly agreed that consistent achievement of therapy and parenting goals for a period of 2-3 months is necessary before recommendations regarding the viability of reintegration could reasonably be made. Mother has had 11 months to establish a basis from which her social workers and therapists could assess her fitness to parent and has admittedly squandered the opportunity. Nothing in the record suggests that additional time would necessarily lead to reintegration of the family.

The evidence presented at the 2-day hearing supports the district court's findings that Mother is unfit to parent and that the condition is unlikely to change in the foreseeable future.

Affirmed.