NOT DESIGNATED FOR PUBLICATION

No. 120,220

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of P.L. and L.L.,
Minor Children.

MEMORANDUM OPINION

Appeal from Shawnee District Court; STEVEN R. EBBERTS, judge. Opinion filed May 10, 2019.
Affirmed.

*Rachel I. Hockenbarger*, of Topeka, for appellant natural mother.

*Morgan L. Hall*, deputy district attorney, and *Michael F. Kagay*, district attorney, for appellee.

Before SCHROEDER, P.J., BUSER and ATCHESON, JJ.

PER CURIAM:  The Shawnee County District Court terminated the parental rights of J.L., finding her unfit on multiple statutory grounds and concluding the unfitness was unlikely to change anytime soon. The district court also concluded the best interests of L.L., J.L.'s then 11-year-old son, and P.L., her then 18-month-old daughter, were served by termination. J.L. has appealed. Because the evidence shows J.L. did little to regain custody of her children or to demonstrate her ability to parent them during the course of the district court proceedings, we affirm. In reaching the merits, we reject the State's jurisdictional argument that J.L. did not file a timely appeal.

1

P.L. was born in early November 2016, and hospital personnel immediately placed her in neonatal intensive care. A blood test showed P.L. had amphetamines in her system when she was born, although she did not display outward physical signs of drug intoxication or withdrawal. J.L. tested positive for amphetamines but denied she had been taking drugs that would account for the test results.

Although J.L. and D.L., the children's father, had not visited P.L. in the hospital, the baby was released to their custody. J.L., D.L., the two children, and J.L.'s mother were living in two rooms in the basement of a Topeka home. During the night of December 1, 2016, a lit candle fell into P.L.'s car seat catching it and surrounding bags of clothing on fire. D.L. died in the blaze. J.L., her mother, and P.L suffered serious injuries. L.L. had less harmful inhalation burns. All four were hospitalized. At the hospital, J.L. and her mother tested positive for methamphetamines. After initially denying any illegal drug use, J.L. admitted using twice shortly before the fire.

The day after the fire law enforcement officers took the children into protective custody while they were being treated at the hospital. About a week later, L.L. was ready to be discharged. J.L. and P.L. needed additional hospital care, and J.L.'s mother had begun displaying unstable behavior consistent with drug withdrawal. No other family resources were available. The district court entered an order placing L.L. and P.L. in the custody of the Department for Children and Families. P.L. lost a finger, had significant facial scarring, and required specialized care for ongoing effects of her injuries in the fire.

The children were adjudicated to be in need of care on June 5, 2017. As the assigned social service agency in this case, KVC prepared a family reintegration plan. As we discuss, J.L. did virtually nothing to satisfy the objectives established in the plan for her to regain custody of the children. In November 2017, the State filed a motion to have

J.L. found unfit and for termination of her parental rights. The district court held an evidentiary hearing on the motion on February 28, 2018.

The evidence showed that the assigned caseworkers were unable to keep in regular contact with J.L. after the children went into State custody. The caseworkers frequently had no reliable telephone number or other means of communicating with J.L. They testified that J.L. failed to participate in any drug testing as required under the plan. She never supplied information verifying employment or suitable housing for herself and the children.

During that time, J.L. did not visit the children. L.L. told his court appointed special advocate that he was very frustrated that J.L. apparently had made no effort to see him or his sister and that he no longer wanted to live with his mother.

At the hearing, J.L. testified that after she was released from the hospital in late 2016, she moved to Guthrie, Oklahoma, where she lived in public housing until she was evicted. About a week later she returned to Topeka, quickly became homeless, and returned to Guthrie. In December 2017, J.L. was living in Manhattan, Kansas, and later moved to Council Grove. She acknowledged she did not inform her caseworkers of her whereabouts as she shuttled between Oklahoma and Kansas and around Kansas.

J.L. told the district court she intended to move to Emporia with the idea of getting a job at a manufacturing plant there. She planned to obtain health insurance and food stamps to aid in caring for L.L. and P.L. According to J.L., she had been working in Guthrie—first at a hotel and then at a fast food restaurant. She never documented her employment to the caseworkers.

J.L. testified that she had been using illegal drugs when the State took L.L. and P.L. into custody. But she claimed to have successfully stopped in July 2017. J.L.

3

acknowledged she had never taken any drug tests to verify her sobriety and had accomplished none of the evaluation or counseling objectives outlined in the reintegration plan. She said she never asked KVC to help her with reintegration. And she admitted that she ultimately gave up even trying to accomplish the tasks in the plan.

At the end of the hearing, the district court orally outlined in some detail its conclusions and explained the reasons J.L. was unfit within the meaning of the Revised Kansas Code for Care of Children, K.S.A. 2017 Supp. 38-2201 et seq.; why the unfitness was unlikely to change in the foreseeable future; and why the best interests of L.L. and P.L. favored termination. A written order of termination containing the requisite findings and conclusions was filed on July 6, 2018. J.L. filed a notice of appeal two weeks later.

LEGAL ANALYSIS

We first take up the merits of the district court's termination of J.L.'s parental rights and then explain the flaws in the State's argument on the timeliness of the appeal, adding some procedural history.

*Merits of Termination Decision*

We start with the legal principles governing termination proceedings. A parent has a constitutionally recognized right to a parental relationship with his or her children. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008) (citing *Santosky*). Accordingly, the State may terminate parental rights with respect to a child only upon clear and convincing proof of parental unfitness. K.S.A. 2017 Supp. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014). After a child has been adjudicated in need of care, a district court may terminate parental rights "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or

4

condition which renders the parent unable to care properly for the child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2017 Supp. 38-2269(a). In considering a parent's unfitness, the district court may apply the factors outlined in K.S.A. 2017 Supp. 38-2269(b) but is not limited to them. Additional statutory factors apply when, as here, a child has been removed from the home. See K.S.A. 2017 Supp. 38-2269(c). A single factor may be sufficient to establish unfitness. See K.S.A. 2017 Supp. 38-2269(f).

As outlined in its written order, the district court relied on six statutory factors in concluding that J.L. was unfit at the time of the termination hearing: (1) her long-term use of illegal drugs left her unable to care for the children, K.S.A. 2017 Supp. 38-2269(b)(3); (2) the failure of reasonable efforts by social service agencies to rehabilitate the family, K.S.A. 2017 Supp. 38-2269(b)(7); (3) her lack of effort to adjust her circumstances, conduct, or conditions to meet the needs of the children, K.S.A. 2017 Supp. 38-2269(b)(8); (4) her failure to provide care in the parental home when able to do so, K.S.A. 2017 Supp. 38-2269(c)(1); (5) her failure to maintain regular visitation with the children or their legal custodian, K.S.A. 2017 Supp. 38-2269(c)(2); and (6) her failure to carry out a reasonable plan approved by the court directed toward reintegration of the family after the children had been removed from her custody, K.S.A. 2017 Supp. 38-2269(c)(3).

When a parent challenges the sufficiency of the evidence supporting termination, an appellate court will uphold the decision if, after reviewing the evidence in the record in a light most favorable to the prevailing party, the district court's findings are supported by clear and convincing evidence or, stated another way, the appellate court is persuaded that a rational fact-finder could have found it highly probable that the circumstances warrant the termination of parental rights. *In re B.D.-Y.*, 286 Kan. at 705. In evaluating the record, the appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or determine factual questions. *In re Adoption of B.B.M.*, 290 Kan. 236,

5

244, 224 P.3d 1168 (2010); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014).

We need not put too fine a point on J.L.'s appeal. The evidence, including J.L.'s own testimony at the termination hearing, amply demonstrates she did little or nothing productive to secure the return of L.L. or P.L. in the 15 months after they were taken into State custody for their own welfare. For example, J.L. abused illegal drugs leading up to the removal of her children, and she never complied with plan requirements for a drug evaluation or drug testing. Her unsupported assertion of sobriety at the termination hearing was too little, too late. J.L.'s admission of abuse and the supporting blood test evidence during her hospitalization combined with her refusal to submit to drug testing forges a strong circumstantial case for chronic and unresolved illegal drug abuse. We have inferred illegal drug use in termination cases based on a parent's deliberate and ongoing avoidance of drug testing. See *In re J.F.*, No. 119,578, 2019 WL 985389, at *3 (Kan. App. 2019) (unpublished opinion); *In re T.E.B.*, No. 119,535, 2018 WL 6253400, at *4 (Kan. App. 2018) (unpublished opinion), *rev. denied* 309 Kan. ___ (March 27, 2019). So the evidence establishes J.L. was unfit under K.S.A. 2017 Supp. 38-2269(b)(3).

Similarly, J.L.'s failure to obtain continuing gainful employment and stable housing suitable for herself, L.L., and P.L. supports a finding that reasonable efforts of KVC aimed at family reunification failed and that J.L. didn't adjust her circumstances to accommodate reunification. Again, J.L. testified she didn't seek out KVC's help and essentially gave up working toward reunification. The evidence establishes she moved around without providing the social service agency with any reliable way to contact her. For the duration of the district court proceedings, J.L. did not communicate with the children. The body of evidence amply supports unfitness under K.S.A. 2017 Supp. 38-2269(b)(7), (b)(8), (c)(2), and (c)(3). See *In re J.L.*, No. 116,293, 2017 WL 1832348, at *4 (Kan. App. 2017) (unpublished opinion) ("[A]n agency is not required to exhaust all its resources to rehabilitate a parent, or make a 'herculean effort' to reintegrate a parent.")

(citing *In re S.C.*, No. 107,950, 2012 WL 5392188, at *3 [Kan. App. 2012] [unpublished opinion]).[*]

[*]We do not see evidence supporting J.L.'s unfitness under K.S.A. 2017 Supp. 38-2269(c)(1) based on a failure to provide care for the children in the parental home when able to do so. By its plain terms, that criterion for unfitness presumes a parent has suitable housing and refuses to allow the child to reside there. Here, the evidence showed J.L. had no stable residence for herself, let alone L.L. and P.L. This particular ground, therefore, appears to be inapplicable. The overall circumstances demonstrate unfitness on multiple other grounds, so any error is harmless.

The evidence also supports the district court's conclusion that J.L.'s unfitness was not likely to change in the foreseeable future, as required under K.S.A. 2017 Supp. 38-2269(a). In gauging the foreseeable future, the courts should use "child time" as the measure. As the Revised Kansas Code for Care of Children recognizes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that different perception typically points toward a prompt, permanent disposition. K.S.A. 2017 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's"). Here, that factor takes on particular significance, especially given P.L.'s young age and the distinctly fractured parental relationship between J.L. and both children.

J.L. really had no relationship whatsoever with P.L. The State took P.L. into protective custody after the fire when she was less than a month old, and J.L. has had no contact with her since then. The evidence showed that L.L. had become despondent over the lack of communication with his mother and her neglect of him and his sister. Any effort at reunification would have had to begin from scratch in 2018. The process would have taken months at best given the panoply of issues that J.L. would have had to

7

address, including employment, housing, drug evaluation and treatment, mental health counseling, and P.L.'s ongoing special healthcare needs as a result of her injuries. At the termination hearing, J.L. offered only empty expressions of what she intended to do in the future. As we have suggested, those were things she should have been attentive to in the preceding 15 months and was not. The district court correctly found this component of unfitness to have been established.

Having found unfitness, the district court then had to decide whether termination of J.L.'s parental rights was "in the best interests" of L.L. and P.L. K.S.A. 2017 Supp. 38-2269(g)(1). As directed by K.S.A. 2017 Supp. 38-2269(g)(1), the district court should give "primary consideration to the physical, mental[,] and emotional health of the child[ren]." A district court makes the best interests determination based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1116. The determination essentially rests in the district court's sound judicial discretion. 50 Kan. App. 2d at 1115-16. An appellate court reviews those sorts of decisions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

Without rehashing all that we have already described, J.L. faced significant obstacles in being able to parent L.L. and particularly P.L. but had done nothing to overcome those obstacles. She had no parent-child relationship with P.L. and had damaged, perhaps irreparably, her relationship with L.L. Under the circumstances, the best interests of the children tilted toward permanency in another familial environment. The district court accurately assessed the factual situation and understood the governing law. We are not prepared to say no other district court would have entered an order of termination under the circumstances. We think otherwise.

8

*Timeliness of J.L.'s Appeal*

We now turn to the State's jurisdictional argument. The right to appeal is statutory, and a party wishing to appeal must comply with the time limits for filing a notice of appeal. The failure to do so deprives the appellate court of jurisdiction. See *Ohlmeier v. Jones*, 51 Kan. App. 2d 1014, 1024, 360 P.3d 447 (2015). Appeals under the Revised Kansas Code for Care of Children are governed by the appellate provisions in the Kansas Code of Civil Procedure. K.S.A. 2017 Supp. 38-2273(c). Pertinent here, K.S.A. 2017 Supp. 60-2103(a) provides that a notice of appeal must be filed within 30 days "from the entry of judgment" under K.S.A. 2017 Supp. 60-258. In turn, a judgment becomes "effective" when a journal entry or judgment form is signed by the district court *and* filed with the clerk of the district court. K.S.A. 2017 Supp. 60-258.

The district court's oral ruling at the conclusion of the termination hearing was not a judgment for purposes of triggering J.L.'s right to appeal. On March 7, about a week after the hearing, the district court signed and filed with the clerk what was captioned as "Findings of Fact and Conclusions of Law Supplementing Prior Findings of Fact and Conclusions of Law Made on the Record and Reaffirmation of Court's Final Decisions and Orders." The document enumerates statutory grounds for J.L.'s unfitness and summarizes facts supporting those grounds. The document, however, neither mentions nor purports to find that J.L.'s unfitness was likely to continue for the foreseeable future or that the children's best interests would be served by terminating J.L.'s parental rights. The document does not purport to contain an order terminating parental rights. And it plainly does not constitute such an order.

On July 6, 2018, the clerk of the district court filed a document captioned as "Findings of Unfitness and Order Terminating Parental Rights or Appointing Permanent Custodian" and signed by the district court. The order recapitulates the statutory grounds

9

on which J.L. was unfit and the supporting evidence and finds those conditions of unfitness are unlikely to change in the foreseeable future. The order also finds the best interests of L.L. and P.L. would be served by terminating J.L.'s parental rights. In short, the document contains the necessary legal predicates for termination and specifically orders the termination of J.L.'s parental rights. Although the district court dated the document for February 28, reflecting the date of the termination hearing, it did not become effective as a judgment until it was filed with the clerk in July. The record contains no other filings pertinent to the timeliness of J.L.'s appeal.

The State argues that J.L.'s time to appeal the termination of her parental rights ran from the entry of the March 7 document. But as we have said, the document neither contained all of the necessary legal findings for nor contained an order of termination of J.L.'s parental rights. Apart from citing K.S.A. 2017 Supp. 60-2103, the State doesn't explain why J.L.'s time to appeal began to run with the filing of the March 7 document rather than the July 6 order. The State likewise offers no argument or case authority as to why the March 7 document legally suffices as an order of termination when it contains no such directive. Accordingly, we reject the jurisdictional argument.

The July 7 document is the first (and only) order the district court signed and then filed terminating J.L.'s parental rights. It is a judgment under K.S.A. 2017 Supp. 60-258 and triggered the time for J.L. to appeal the termination of her parental rights and the constituent legal components of that determination. J.L. filed a timely notice of appeal from that judgment. So we have jurisdiction to decide the merits.

Affirmed.

10