NOT DESIGNATED FOR PUBLICATION

No. 121,376

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of S.T., A Minor Child.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; GREGORY D. KEITH, judge. Opinion filed December 13, 2019. Reversed and remanded with directions.

*Jordan E. Kieffer*, of Dugan & Giroux Law, Inc., of Wichita, for appellant natural father.

*Julie A. Koon*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before ATCHESON, P.J., BRUNS, J., and BURGESS, S.J.

PER CURIAM:  The Sedgwick County District Court found J.T. to be legally unfit to parent his son S.T. because he would not be released from prison for at least six months and had not communicated with the child during his incarceration. But the evidence failed to support the district court's finding that those conditions of unfitness were unlikely to change in the foreseeable future. The district court, therefore, erred in terminating J.T.'s parental rights. We reverse and remand for further proceedings.

FACTUAL AND PROCEDURAL HISTORY

S.T. was born in early April 2017 and was placed in the custody of the Department for Children and Families five days later. A.B., S.T.'s mother, had exposed him to methamphetamine during her pregnancy, and she had continuing drug abuse problems. J.T. and A.B. were not married. When S.T. was born, J.T. was homeless and

1

unemployed. He worked intermittently on pipeline construction projects that typically involved travel and extended stays in remote places. Nobody disputes the circumstances rendered S.T. a child in need of care.

A.B. eventually relinquished her parental rights to S.T. in favor of his being adopted. She did not actively participate in the termination proceedings in the district court and is not a party to this appeal.

After J.T.'s paternity was established, he sought legal custody of S.T. and an assigned social service agency set up a plan to integrate J.T. and S.T. as a family unit. As part of that process J.T. had regular supervised visits with S.T. According to the social workers who testified at the termination hearing, J.T. managed those visits capably and demonstrated entirely appropriate parenting skills with S.T.

Not to put too fine a point on it, J.T. apparently didn't manage other aspects of his life particularly well. J.T. was arrested in June 2017 on felony assault and firearms charges. He entered a plea to and was convicted of at least one felony in the district court in connection with that incident. The district court sentenced J.T. to prison but placed him on probation. J.T. had been in custody from his arrest until September 2017. Upon his release, he resumed supervised visits with S.T. and otherwise continued working on the family unification plan.

The record on appeal in this case lacks details about J.T.'s adjudication on those charges and his criminal history generally. At the termination hearing, the district court, at the request of the State and without objection of any other participants, took judicial notice of the files in a number of criminal cases in which J.T. had been charged. But none of those files has been made part of the record. We have been able to piece together at least some of the salient aspects of the prosecution stemming from J.T.'s arrest in June

2017, given its centrality to the grounds for termination. We have been less successful in figuring out what happened in the other cases.

In August 2018, J.T. was charged with misdemeanor domestic battery in Wichita municipal court. The disposition of that charge is not clear from the record. But the district court revoked J.T.'s probation on the felony conviction from a year earlier and ordered him to serve 23 months in prison.

After J.T. was taken into custody in August 2018 and sent to prison, he had no contact with S.T., who was then almost a year-and-a-half old. S.T. had been placed with a family that had already taken in his older half-sibling. At the termination hearing, a social worker testified that parents in prison seldom have personal contact with their children, even by telephone. She noted that communication with S.T. by telephone would have been impractical given his age.

In its motion to terminate J.T.'s parental rights, the State identified multiple statutory grounds: a parent's conviction of a felony and imprisonment, K.S.A. 2018 Supp. 38-2269(b)(5); the inability of social service agencies to unify the family despite reasonable efforts, K.S.A. 2018 Supp. 38-2269(b)(7); a parent's failure to adjust his or her circumstances, conduct, or condition to meet the child's needs, K.S.A. 2018 Supp. 38-2269(b)(8); and a parent's failure to maintain regular visitation, contact, or communication with the child, K.S.A. 2018 Supp. 38-2269(c)(2). At the termination hearing in early January 2019, the State presented the criminal case files, other documentary evidence, and testimony from two social workers involved in preparing and overseeing the family unification plan for J.T. and S.T. Although J.T. was present at the hearing with an appointed lawyer, he did not present any additional evidence. The district court acknowledged and did not dispute J.T.'s "proffer" that he was scheduled to be released from prison in July 2019, although he would not have completed his full sentence until mid-2020.

3

Using a form journal entry, the district court found J.T. to be unfit based on his felony conviction and incarceration and the resulting lack of communication with S.T. The form contains boxes corresponding to each of the statutory grounds for termination listed in K.S.A. 2018 Supp. 38-2269(b) and (c). The district court marked those boxes for K.S.A. 2018 Supp. 38-22(b)(5) and K.S.A. 2018 Supp. 38-2269(c)(2). Presumably, then, the district court concluded the State failed to prove the other grounds identified in the motion to terminate. The district court also found that the proved bases of unfitness were unlikely to change in the foreseeable future, as required by K.S.A. 2018 Supp. 38-2269(a), and that S.T.'s best interests would be served by terminating J.T.'s parental rights, as required by K.S.A. 2018 Supp. 38-2269(g)(1).

J.T. has appealed the termination order. The State has not filed a conditional cross-appeal challenging the district court's denial of termination under K.S.A. 2018 Supp. 38-2269(b)(7) and (b)(8), so we do not consider those grounds.

LEGAL ANALYSIS

We outline the legal principles guiding this appeal. A parent has a constitutionally recognized right to a continuing relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008) (citing *Santosky*). The right entails a substantive liberty interest shielded in the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (substantive liberty interest); *Pierce v. Society of Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) (recognizing "the liberty of parents and guardians to direct the upbringing and education of children under their control"). Accordingly, the State may terminate a parent's right to raise a minor child only upon clear and convincing proof of parental unfitness. K.S.A. 2018 Supp. 38-2269(a);

4

*Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

After a child has been adjudicated in need of care, as happened here, a district court may terminate parental rights "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2018 Supp. 38-2269(a). The statute contains a nonexclusive list of nine conditions that singularly or in combination would amount to unfitness. K.S.A. 2018 Supp. 38-2269(b). And the statute lists four other conditions to be considered if a parent no longer has physical custody of a child. K.S.A. 2018 Supp. 38-2269(c). This court has broadly equated unfitness with the "incapacity to perform parental obligations." *In re A.N.P.*, 23 Kan. App. 2d 686, 692, 934 P.2d 995 (1997); see *In re Adoption of A.M.M.*, No. 109,247, 2013 WL 5507483, at *5 (Kan. App. 2013) (unpublished opinion); *In re Baby Girl E.*, No. 103,740, 2010 WL 4668356, at *4 (Kan. App. 2010) (unpublished opinion).

In assessing the unlikelihood of change in the foreseeable future under K.S.A. 2018 Supp. 38-2269(a), we gauge the permissible duration using "child time" as the measure. As the governing statutes recognize, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that difference in perception typically tilts toward a prompt, permanent disposition. K.S.A. 2018 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's"). The district court acknowledged the concept of child time and endeavored to apply it here.

When the sufficiency of the evidence supporting a district court's decision to terminate parental rights is challenged, an appellate court will uphold the findings of unfitness and unlikelihood of change if, after reviewing the evidence in the record in a light most favorable to the prevailing party, they are supported by clear and convincing evidence. Stated another way, the appellate court must be persuaded that a rational fact-finder could have found it highly probable that the circumstances justify unfitness and unlikelihood of change as components of the termination of parental rights. *In re B.D.-Y.*, 286 Kan. at 705. In evaluating the record, the appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or determine factual questions. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014). Here, we must view the evidence presented at the hearing in a light favoring the State, as the party prevailing in the district court.

At the time of the termination hearing in January 2019, J.T. was statutorily unfit as a result of his felony conviction and imprisonment. Not to belabor the obvious, persons serving prison sentences cannot parent their children in any conventional sense while they are incarcerated. They are unable to provide a home and typically cannot offer meaningful financial or emotional support under those circumstances. See *In re A.L.E.A.*, No. 116,276, 2017 WL 2617142, at *4 (Kan. App. 2017) (unpublished opinion). J.T.'s situation was cast in that mold. The ground, however, rests on an actual conviction and present incarceration rather than on a prediction of miscreancy—no matter how sound the prognostication might seem. As a result of his imprisonment, J.T. also did not communicate with S.T. for an extended time, another statutory ground supporting unfitness. We find no error in the district court's determination that J.T. was unfit in January 2019.

But we part ways with the district court on the unlikelihood of change, the other component necessary to support a finding of statutory unfitness under K.S.A. 2018 Supp. 38-2269(a). Here, the district court proceeded on the assumption that J.T. would be

6

released from prison in July 2019, about six months after the termination hearing. We have no basis to reject that assumption in assessing the district court's decision. Since we are bound by the appellate record, we do not know whether J.T. has been released or remains in prison.

One of the assigned social workers testified that absent a termination order, J.T. would be permitted to resume visits with S.T. upon his release from prison and to reengage working toward other objectives necessary for family integration. The social worker suggested that process would take at least six months following J.T.'s release. But she agreed that given S.T.'s age, J.T. would be able to bond with the child during that time.

We cannot say the evidence furnishes a sufficient basis for a fact-finder to conclude J.T.'s unfitness would be unlikely to change in the foreseeable future. The two bases on which the district court found J.T. to be unfit would have been substantially mitigated within six months of the termination hearing assuming J.T. were released from prison in July 2019. As we have said, the district court premised its rulings on that assumption, and we review them in that light. Even taking account of child time and S.T.'s young age, the district court erred in finding those conditions would persist sufficiently long to support termination of J.T.'s fundamental parental right. The district court erred in that conclusion, undermining the termination order.

Before turning to the matter of remedy, we mention a couple of points. First, given our conclusion the district court missed the mark on unfitness, we need not and do not consider the district court's finding that S.T.'s best interests were served by termination, a ruling we would review for abuse of discretion based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1115-16. Second, J.T.'s criminal history—at least as portrayed in the appellate record—is troubling. As we have said, J.T. was convicted of a felony in 2017 and, notwithstanding this termination case, managed to violate his

7

probation, resulting in an extended prison term that derailed his efforts to achieve legal and physical custody of S.T. The record also shows J.T. had three convictions in Wichita municipal court between 2007 and 2010 for battery or domestic battery of three different women. And he had charges filed against him in a number of other cases the district court judicially noticed, although we can't determine the outcome in them from this record. J.T.'s course of conduct, particularly after S.T.'s birth, indicates an unwillingness or inability to conform and reform his criminal behavior, even though the stakes included the loss of any continuing relationship with his son.

We now consider the appropriate remedy. As of now, S.T. remains a child in need of care. We have not disturbed that ruling. Nor have we reversed the district court's findings that J.T. was unfit at the time of the termination hearing because of his incarceration and lack of communication with S.T. He may still be in prison and unfit. We don't know.

On remand, the district court, therefore, should take the steps necessary to assess whether S.T. continues to be in need of care, meaning J.T. is unable to presently parent him adequately. S.T. should remain in the legal custody of the Department and in the physical custody of his present placement while the assessment takes place. We presume the assessment will entail some investigation by the Department or an assigned social service agency. Depending on the circumstances, the district court may then consider either a revised family unification plan or a new termination hearing.

Reversed and remanded for further proceedings.