NOT DESIGNATED FOR PUBLICATION

No. 117,723

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Adoption of
BABY BOY C.L.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; KATHLEEN M. LYNCH, judge. Opinion filed February 23, 2018. Affirmed.

*Pantaleon Florez, Jr.*, of Topeka, for appellant natural father.

*Kevin W. Kenney*, of Kevin W. Kenney, P.A., of Prairie Village, for appellees adoptive parents.

Before HILL, P.J., MALONE, J., and MERLIN G. WHEELER, District Judge, assigned.

PER CURIAM: The determination of whether the father of baby boy C.L. will retain his parental rights or whether the child will be available for adoption by prospective adoptive parents, who have undoubtedly developed emotional bonds, is the issue for consideration in this appeal. The issue will be ultimately resolved by judges who, although charged by law to be disinterested, nevertheless feel the emotional struggles of the parties.

C.L. was born September 13, 2016, to T.L. (Mother) who relinquished her parental rights to Kansas Children's Service League (KCSL). In turn, KCSL placed the child with J.W. and E.W., the petitioners, who seek to terminate the parental rights of L.V. (Father) and adopt C.L. The district court granted the petitioners' request to terminate Father's parental rights, finding that Father abandoned or neglected C.L. and failed to make

1

reasonable efforts to support and communicate with C.L. after hearing of his birth. Father appeals, arguing that the district court's factual findings were not supported by clear and convincing evidence. Finding that the district court's factual findings as to Father's failure to make reasonable efforts to support and communicate with C.L. are supported by clear and convincing evidence, we affirm.

*Facts*

The relationship of Father and Mother is best described as on-again, off-again from 2012 to December 2015. Despite having no formal relationship, Father and Mother remained friends and on occasion engaged in sexual intercourse. They both lived in Shawnee County, Kansas. This relationship resulted in the birth of C.L. on September 13, 2016, at a hospital in Shawnee County. Mother was not aware of her pregnancy until she lost her mucus plug and gave birth later in the day. Mother had never advised Father that she was pregnant or that he might be the father of a child. Mother did not tell Father that she had given birth, did not disclose that she had a baby, and gave false information to him as to the reason for her hospitalization.

After the birth, Mother contacted KCSL and relinquished her parental rights and placed the care of C.L. with KCSL. He was then placed in the care of the petitioners, who sought to adopt C.L.

Father was not aware of the pregnancy or birth until he was contacted on September 15, 2016, by Melinda Kline, a KCSL caseworker. Kline contacted Father by phone and told him that he was the presumed father of C.L., but would not disclose the name of the mother because she had requested a closed adoption. Kline indicated that Father was shocked to learn of the birth and had expressed a willingness to relinquish his parental rights.

2

However, the following day, Kline again contacted Father and in a conversation that included Father's mother, the paternal grandmother of C.L., Kline was told that if paternity testing established that C.L. was Father's child, they intended to keep C.L.

Petitioners filed this case in the Wyandotte County District Court on September 19, 2016, seeking termination of Father's parental rights and the adoption of C.L. In what might be best termed as a shotgun approach, the petition alleged the existence of five of the seven bases for termination of parental rights in K.S.A. 2016 Supp. 59-2136(h)(1)(A)-(G). Petitioners' counsel advised at oral argument that this was a routine filing and admitted that no significant investigation had been conducted to determine whether facts supported each of the allegations which would support termination of Father's parental rights. Candidly, counsel also admitted that a factual basis did not exist for all of the allegations. The district court's consideration was limited to a determination of whether:

- Father had abandoned or neglected C.L. after having knowledge of his birth; or
- Father had made no reasonable effort to support or communicate with C.L. after having knowledge of his birth.

During the brief period of time between birth and the filing of the adoption petition in Wyandotte County District Court, Father obtained counsel and on September 20, 2016, filed a petition in Shawnee County District Court seeking genetic testing to establish C.L.'s paternity. Included in that petition was a request that if testing established paternity, that Father be awarded custody of C.L. Mother responded to the paternity petition and requested that it be stayed until the termination and adoption case in Wyandotte County could be resolved. The Shawnee County District Court agreed and entered an order staying the Shawnee County District Court proceedings. In its order, the Shawnee County District Court noted that the Wyandotte County District Court had already ordered paternity testing in the termination case. Notably, there were no

3

restrictions imposed upon Father which would have prevented him from contacting either the child or KCSL in an effort to provide support, or communicate with either the child or the prospective adoptive parents.

Despite there being no prohibitions in the stay order on Father having contact with C.L., he has never had any contact with C.L., nor did he ask Mother or KCSL to see him.

Despite KCSL's communications with Father subsequent to the birth of C.L., Father was not served notice of both the adoption filing and the first hearing until Saturday, November 26, 2016, at 5:07 p.m.—three days prior to the hearing on November 29, 2016. Despite the short notice, Father appeared at Wyandotte County District Court, at which paternity testing was ordered by the court. Father was tested on December 13, 2016. The petitioners did not take C.L. for testing until January 9, 2017. The matter again came before the Wyandotte County District Court on March 24, 2017, and the court issued its memorandum decision on April 26, 2017, terminating the parental rights of Father. The record was unclear as to whether the adoption petition was granted subsequent to the termination, but at oral argument, the parties clarified that the adoption petition had not been granted. Father timely filed this appeal of the order terminating his parental rights.

Father was a full-time employee at Mars and regularly received overtime hours. He resided with his mother and her older son in a three-bedroom apartment. Father's expenses were only for his cell phone, a contribution to his mother's expenses of $100-$200 per month, and a $460 per month payment for a 2014 GMC Terrain—a second vehicle which he alleges he purchased to provide transport for C.L.

During the course of the termination and adoption litigation, and subsequent to his deposition, Father purchased a crib, playpen, car seat, clothing, and some toys for C.L. but did not provide any of these items to petitioners or the child. He made no

4

contributions toward necessities for the child, such as diapers or food, and offered no gifts for the child. Father did place C.L. on his employer-provided health insurance plan but failed to advise petitioners about the coverage which would have been available to offset birthing or medical expenses for C.L. Father never inquired about or offered to pay any medical or other expenses for C.L. and paid no support subsequent to his birth.

The only other evidence of preparation made by Father to provide for the care of C.L. came in the testimony of his mother. She had cleared out her bedroom and made it a nursery. Father does argue that his acquisition of counsel and involvement with both the Wyandotte County and Shawnee County District Court proceedings should be considered as efforts on his part to support the child. The outcome of this appeal hinges on whether these acts are sufficient to avoid the termination of Father's parental rights.

*Jurisdiction to hear appeal*

Even though it was established at oral argument that the adoption request of petitioners was not granted prior to this appeal, an order terminating parental rights under K.S.A. 2016 Supp. 59-2136 is considered an appealable final order. *In re Adoption of Baby Girl P.*, 291 Kan. 424, 429, 242 P.3d 1168 (2010). The matter is therefore properly before this court.

*Standard of review*

Father asserts that the decision to terminate his parental rights as a result of abandonment or neglect (K.S.A. 2016 Supp. 59-2136[h][1][A] and no reasonable efforts to support C.L. (K.S.A. 2016 Supp. 59-2136[h][1][C] was in error because the evidence did not support the termination, and the decision of the district court misconstrued applicable law. The petitioners contend to the contrary and seek affirmation of the termination ruling.

5

Father argues that the standard of review of the district court's decision is unlimited because it involves a question of law. The petitioners argue that this court merely reviews to determine whether the district court's ruling was supported by substantial competent evidence. Both arguments are flawed.

When appellate courts review a district court's decision to terminate a person's parental rights based upon factual findings made under K.S.A. 2016 Supp. 59-2136(h)(1), appellate courts consider whether the district court's factual findings are supported by clear and convincing evidence when viewed in the light most favorable to the prevailing party. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010). Evidence is clear and convincing if it is sufficient to establish that the truth of the facts asserted is highly probable. *In re B.D.-Y.*, 286 Kan. 686, 696, 187 P.3d 594 (2008). In making this analysis, appellate courts will not reweigh conflicting evidence, the credibility of witnesses, or other questions of fact. *B.B.M.*, 290 Kan. at 244. Thus, this court will consider whether the district court's findings were supported by clear and convincing evidence, viewing that evidence in a light favorable to petitioners.

At the outset, it is important to note that while evidence of a party's conduct in a termination proceeding may be relevant to consideration of more than one of the bases for termination of parental rights, our Supreme Court has declared that K.S.A. 2016 Supp. 59-2136(h)(1)(A) and (h)(1)(C) are not redundant and evidence of financial neglect under (h)(1)(C) is not the same as abandoning or neglecting the child under (h)(1)(A). *In re Adoption* of *Baby Girl P.*, 291 Kan. at 432. Accordingly, this court will independently consider whether clear and convincing evidence exists to support either or both of the district court's findings.

Although Father asserts that the standard of review is unlimited because it involves a question of law, it is apparent that he has not raised any arguments regarding statutory interpretation. His remaining complaint is about the factual findings supporting

6

the district court's termination and accordingly, our review will turn to the question of whether there is clear and convincing evidence to support those decisions.

*Is there clear and convincing evidence to support termination under K.S.A. 2016 Supp. 59-2136(h)(1)(C)?*

Father asserts that the district court's decision to terminate his parental rights under K.S.A. 2016 Supp. 59-2136(h)(1)(C) was in error because it failed to consider that he had filed a paternity petition and provided financial support for C.L. by placing C.L. on his medical insurance.

Father's arguments fail for a variety of reasons, but foremost among these is his explicit concession that he provided no direct financial support on behalf of the child through KCSL, Mother, or petitioners' attorney. Thus, even if we were to consider Father's testimony as the only evidence regarding this issue, it is clear and convincing that there was no actual support or offer of support. Nevertheless, Father contends that he sought to provide financial, emotional, and other support for his child through the paternity action. Unfortunately for Father, the paternity petition in Shawnee County was stayed without any limitation upon his ability to provide support through proceedings in Wyandotte County. Should Father have truly sought to financially support C.L. or even have contact with him, he should have repeated his request in Wyandotte County District Court. Further, when we also consider the evidence that Father did not communicate the existence of insurance coverage to the petitioners, petitioners' counsel, or KCSL, it is evident that the district court's finding was correct. Although Father suggests that it was petitioners' and KCSL's fault for not telling him that C.L. had medical bills, he fails to explain why he did not even communicate the fact of insurance coverage to anyone.

In order to properly address Father's contentions of error on the part of the district court, we must consider one additional claim. That claim is that the district court's finding

7

that Father had not requested a photo of C.L. was in error. There was testimony at the termination hearing that Father had never sent a photo of himself to C.L., but an examination of the record reveals no evidence that Father requested a photo of C.L. Because this fact was not in evidence, the district court should not have made or relied on such a finding. Even so, any error from this finding was harmless, as this was only a minor part of the district court's termination ruling.

A review of rulings in prior termination cases is helpful in understanding this court's analysis of the evidence. In *In re Adoption of Baby W.*, No. 101,258, 2009 WL 2030478 (Kan. App. 2009) (unpublished opinion), this court dealt with facts remarkably similar to those of the present appeal. In *Baby W.*, the father's parental rights were terminated under K.S.A. 2008 Supp. 59-2136(h)(1)(C). The father appealed, arguing that he had demonstrated reasonable efforts to support or communicate with the child by hiring an attorney, submitting to genetic testing, acknowledging paternity, objecting to the adoption, asking for temporary custody, asking for the process to be expedited, taking a deposition, and driving from Virginia with his family to ensure protection of his parental rights. In rejecting his argument, this court noted that while his challenge to the adoption and termination of his parental rights afforded him the opportunity to support and communicate with his child, his legal efforts could not make up for the evidence that he had made no reasonable effort to actually support or communicate with the child after learning of the child's birth. 2009 WL 2030478, at *6.

In *In re Adoption of Baby C.*, No. 90,035, 2003 WL 22990194 (Kan. App. 2003) (unpublished opinion), the father had requested only one visitation with Baby C. and during that visitation he had to be cajoled to hold the baby and the physical contact lasted only a short time. No other communication occurred between the father and Baby C. and he never supported Baby C. On these facts, this court upheld the termination of his parental rights under K.S.A. 59-2136(h).

8

Both parties to this appeal cite *Baby Girl P.*, 291 Kan. 424, in support of their respective positions. In *Baby Girl P.*, the father was not informed of the birth of the child and was initially unaware that he had a daughter. Approximately one month after the petition for adoption was filed, an investigator contacted the paternal grandmother and upon learning of the birth of the child, the father immediately obtained counsel. He filed motions through counsel seeking visitation with his daughter and was eventually permitted to visit the child on two occasions for one hour each time. The father wrote to the prospective adoptive couple expressing appreciation for the visits and offered to provide support for her. He also delivered Christmas presents to the adoption agency to pass along to the child. After an evidentiary hearing, the district court granted the petition to terminate the father's parental rights under K.S.A. 2009 Supp. 59-2136(h)(1)(C). Our Supreme Court ruled that K.S.A. 2009 Supp. 59-2136(h)(1)(C) required "simply that a father make reasonable efforts to support or communicate with the child, not that he make extraordinary efforts to have a parental relationship with the child." 291 Kan. 424, Syl. ¶ 5.

Although the decision of the Kansas Supreme Court in *Baby Girl P.* was a victory for the father, it does not support the position of Father in this case because the facts of the present case are distinguishable. More like the facts of *Baby W.*, there is no evidence that Father supported or communicated with C.L. after learning of his birth. While he challenged the adoption and termination and filed the paternity action, he concededly made no effort to either communicate with or support the child in any respect. Although he points to the acquisition of an automobile, health insurance coverage, and some limited furnishings, none of this information was communicated or offered to the petitioners or KCSL. Thus, just like the father in *Baby W.*, while the filing of the paternity action in Shawnee County may have ultimately afforded Father the opportunity to support and communicate with his child, his legal efforts cannot make up for the evidence that he made no reasonable effort to support or communicate with C.L. after learning of his birth.

9

Given that Father failed to make even minimal attempts to support or communicate with his child, his legal efforts do not satisfy the standard of reasonableness adopted by our Supreme Court in *Baby Girl P*. Thus, upon review, it is our conclusion that the district judge's findings are deemed highly probable, i.e., supported by clear and convincing evidence. See *In re Adoption of B.B.M.*, 290 Kan. at 244.

*Is there clear and convincing evidence to support termination under K.S.A. 2016 Supp. 59-2136(h)(1)(A)?*

In light of this court's finding that the district court's decision to terminate Father's parental rights under K.S.A. 2016 Supp. 59-2136(h)(1)(C) was proper, it is unnecessary that an extensive analysis of the district court's findings under subsection (h)(1)(A) be undertaken. However, inasmuch as the prospective adoptive parents have argued that both subsections (h)(1)(C) and (h)(1)(A) are supported by clear and convincing evidence, brief discussion of this issue will be undertaken. Subsection (h)(1)(A) requires that the father abandoned or neglected the child after having knowledge of the child's birth. Our Kansas Supreme Court in *Baby Girl P.* made it clear that evidence of the father's financial neglect, which would support a finding of termination under subsection (h)(1)(C), is not the same as abandoning or neglecting a child under subsection (h)(1)(A). See 291 Kan. at 432.

In *In re Baby Girl B.*, 46 Kan. App. 2d 96, 111, 261 P.3d 558 (2011) (Malone, J., concurring), the concurrence noted that the term "abandonment" as used in subsection (h)(1)(E) is defined in Black's Law Dictionary as "[t]he act of leaving a spouse or child willfully and without an intent to return." See Black's Law Dictionary 2 (10th ed. 2014). Although the analysis in *Baby Girl B.* dealt with a different subsection than K.S.A. 2016 Supp. 59-2136(h)(1)(A), there is no reason for this court to conclude that the term "abandonment" as used in subsection (h)(1)(E) has a different meaning than the same term as set out in subsection (h)(1)(A).

10

Because the subsections are not redundant and the financial neglect necessary to make the finding under subsection (h)(1)(C) is not binding as to an analysis under subsection (h)(1)(A), it is important that we again conduct an analysis of the evidence to determine whether this finding is properly supported. *Baby Girl B.*, although admittedly dealing with differing subsections of K.S.A. 2016 Supp. 59-2136(h)(1), guides us in our analysis. In *Baby Girl B.*, the father, like Father in this case, was not aware of either the pregnancy or the birth of the child until after the birth. The petition for termination of Father's parental rights occurred only four days after Father was made aware that he was the presumed father of the child, and within five days after being made aware of the birth, Father filed his petition to establish C.L.'s paternity. While admittedly Father did little after filing his petition in Shawnee County District Court, it is patently evident that he did not have a reasonable time in which to have undertaken efforts to emotionally or otherwise connect with the child. It should also be kept in mind that although Father had inquired about relinquishing his parental rights to KCSL, on the next day he communicated to the caseworker that he was not interested in signing the relinquishment documents.

It can hardly be said that in this limited time frame there was a sufficient opportunity for Father to have engaged as a parent or willfully left the child while evidencing no intent to return. The evidence used by the district court, while supporting its (h)(1)(C) finding, does not, however, support its subsection (h)(1)(A) finding. Despite finding that the evidence does not support a finding that Father abandoned C.L., nevertheless, the termination of his parental rights remains appropriate by reason of his failure to engage in reasonable efforts to support the child.

Affirmed.

11

* * *

MALONE, J., concurring: I agree with the majority that that there was not clear and convincing evidence that L.V. abandoned or neglected C.L. after having knowledge of the child's birth; so there was insufficient evidence to terminate his parental rights under K.S.A. 2016 Supp. 59-2136(h)(1)(A). I also agree with the majority that there was clear and convincing evidence that L.V. made no reasonable efforts to support or communicate with C.L. after having knowledge of the child's birth, sufficient to terminate his parental rights under K.S.A. 2016 Supp. 59-2136(h)(1)(C). To me, it was inexcusable for L.V. to make no attempt to visit C.L. to try to establish some bond with the child while the case was pending in district court, and for that reason alone, I would uphold the district court's termination of L.V.'s parental rights. However, there are some aspects of how this case was handled that I find troubling, compelling me to write this separate opinion.

To briefly review the unusual facts of this case, C.L. was born on September 13, 2016. T.L., the mother, claimed that she was not aware of her pregnancy until the day the baby was born. L.V. did not learn that he was the alleged father of C.L. until two days after the baby was born. The very next day, L.V. informed the caseworker that if genetic testing established that he was the father, he wanted to step forward to raise his son. At that point, there was no evidence that L.V., a 21-year-old young man who had a good job, was unfit to be a parent. But L.V. was not given much of a chance to prove that he could be a good parent because, by the time he learned about C.L., the wheels were already in motion to find an adoptive family. The fact that L.V. was willing to step forward to assume his parental responsibilities should have been viewed as a good thing. Instead, he was simply someone who was standing in the way of completing the adoption.

The record does not give much explanation for how Kansas Children's Service League (KCSL) became involved in this case, except that T.L. contacted the agency as soon as C.L. was born because she did not want to keep her baby. T.L. relinquished her

12

parental rights to KCSL. A KCSL caseworker appropriately contacted L.V. to notify him that he was the alleged father and to obtain a written relinquishment of parental rights from him, but the caseworker would not even disclose the mother's name to L.V. The next day, L.V. informed the caseworker that he would not sign the relinquishment and that he wanted to keep the child if genetic testing established that he was the father. That news appears to have set off a race to the courthouse.

On September 19, 2016, three days after L.V. refused to sign the relinquishment, the petitioners, J.W. and E.W., filed an adoption petition in Wyandotte County District Court. The only connection this case has with Wyandotte County is that KCSL maintains an office there. C.L. was born in Shawnee County, both biological parents reside in Shawnee County, and the petitioners, with whom C.L. already had been placed, reside in Johnson County. The adoption petition was not served on L.V. until November 26, 2016, three days before an initial hearing was scheduled to take place in district court.

Meanwhile, on September 20, 2016, L.V. filed a paternity action in Shawnee County District Court. The petition sought genetic testing to establish C.L.'s paternity, and if the testing established that L.V. was the father, L.V. asked the court to award him custody. As it turns out, L.V.'s petition was filed one day too late. The Shawnee County District Court appropriately stayed the paternity case until the adoption proceeding in Wyandotte County could be resolved. But as the majority opinion notes, there was nothing in the stay order that prevented L.V. from attempting to visit C.L. or to provide support for the child while the adoption case was pending. Genetic testing later established that L.V. is, in fact, C.L.'s biological father.

What troubles me most about the case are the allegations against L.V. included in the adoption petition. The adoption petition, prepared by legal counsel, alleged the existence of almost every legal basis for termination of parental rights set forth in K.S.A. 2016 Supp. 59-2136(h)(1)(A)-(G). However, the petition alleged no specific facts

13

supporting any of the allegations. The petition alleged, in the language of the statute, that L.V., after having knowledge of the pregnancy, failed to provide support to the mother and abandoned the mother while she was pregnant, even though these allegations obviously were untrue. The petition also alleged, in the language of the statute, that L.V. had made no reasonable efforts to support or communicate with the child and that he had abandoned or neglected the child after having knowledge of the child's birth. But at the time the petition was filed, there was no evidence to support these allegations because the petition was filed only four days after L.V. had been informed of C.L.'s birth. In fact, the only information available to the parties when the adoption petition was filed was that L.V. had communicated his desire to assume his parental responsibilities and raise the child. Basically, the petition alleged almost every legal ground for termination of parental rights set forth in the statute, without any evidence at the time to support the allegations, in the hope that something would stick by the time the case was heard in court.

At the evidentiary hearing on March 24, 2017, T.L. testified that during her relationship with L.V., he had problems with drugs, alcohol, and depression. L.V. testified and denied any problems with drugs or alcohol, and he stated that his mental health issues were behind him. The district court made no findings as to those allegations, and in fact, the district court did not make any findings that termination of L.V.'s parental rights was in C.L.'s best interest. Instead, the district court terminated L.V.'s parental rights based on its findings that he abandoned or neglected C.L. after he was made aware of the child's birth and that he made no reasonable efforts to support or communicate with C.L. after having knowledge of the child's birth. The evidence to support these findings developed after the adoption petition was filed and while the case was pending in district court, but none of the evidence actually existed or was known when the petition was filed. Had L.V. insisted on receiving a hearing immediately after the adoption petition was filed, it appears there would have been little or no evidence to support the termination of his parental rights.

14

Turning to the applicable law, K.S.A. 2016 Supp. 59-2136(h)(1)(A)-(G) provides that a district court can terminate a father's parental rights upon finding by clear and convincing evidence the existence of any one of seven factors listed in the statute. Most of the factors involve the father abandoning or neglecting the child after having knowledge of the child's birth, failing to provide support for the mother after having knowledge of the pregnancy, or failing to assume the duties of a parent for two consecutive years. The gist of the entire statute is that the district court can terminate the father's parental rights upon finding by clear and convincing evidence that the father has failed to step up to the plate to assume his parental responsibilities within a reasonable amount of time after learning about the responsibilities. K.S.A. 2016 Supp. 59-2136(h)(2) provides that the district court may consider and weigh the best interest of the child in deciding whether parental rights shall be terminated under this subsection.

The Kansas Supreme Court has recognized that "a natural parent who has assumed his or her parental responsibilities has a fundamental right, protected by the United States and Kansas Constitutions to raise his or her child." *In re Adoption of G.L.V.*, 286 Kan. 1034, 1057, 190 P.3d 245 (2008). A court must "strictly construe adoption statutes in favor of maintaining the rights of natural parents in those cases where it is claimed that, by reason of a parent's failure to fulfill parental obligations as prescribed by statute, consent to the adoption is not required." *In re Adoption of Baby Girl P.*, 291 Kan. 424, 430, 242 P.3d 1168 (2010). A petitioner in an adoption proceeding under K.S.A. 2016 Supp. 59-2136 has the burden of proving by clear and convincing evidence that termination of parental rights is appropriate. 291 Kan. at 430.

In light of the preference recognized in the law favoring a biological parent's right to raise his or her child, assuming the parent is fit, it seems to me like this case went off track from the moment C.L. was born. Only three days later, L.V. expressed his desire to assume his parental responsibilities. At that point, instead of rushing to the courthouse to file an adoption petition, all parties involved in the case should have at least temporarily

15

put the adoption plans on hold. In the meantime, KCSL or some other appropriate agency could have conducted an investigation of L.V.'s home and background to see if he would have been a suitable placement option for C.L. Assuming that L.V. passed the initial investigation and background check, C.L. could have been temporarily placed with L.V. for a trial period to be monitored by the appropriate agency or the courts. Then, if any evidence developed that L.V. was not properly caring for C.L., a petition for termination of parental rights could have been filed with the court. Giving L.V. more of a chance to prove his fitness as a father would have been a better approach than rushing into an adoption proceeding and finding out later if there was any evidence to support it.

In the end, however, L.V. was given *some* chance to step up as a parent but he failed to ask for any contact or visitation with C.L. while the case was pending in district court. At the hearing, L.V. testified that it was his understanding that he was prohibited by the court from attempting to contact his child. However, L.V.'s understanding that a no-contact order existed simply was not the case. Moreover, L.V. made no reasonable effort to provide financial support for C.L.'s benefit while the case was pending in district court. For these reasons, I would uphold the district court's decision to terminate L.V.'s parental rights under K.S.A. 2016 Supp. 59-2136(h)(1)(C).