NOT DESIGNATED FOR PUBLICATION

No. 120,193

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of J.S.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; MICHAEL D. GIBBENS, judge. Opinion filed May 3, 2019. Affirmed.

*Chadler E. Colgan*, of Colgan Law Firm, LLC, of Kansas City, for appellant natural father.

*Joan Lowdon*, deputy county attorney, and *Todd Thompson*, county attorney, for appellee.

Before GARDNER, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM:  O.S. appeals the decision of the Leavenworth County District Court terminating his parental rights to his son J.S. and contends insufficient evidence supported the ruling. The record shows O.S. did little or nothing to demonstrate his capacity to parent J.S. after authorities properly took the child into protective custody almost immediately after he was born. We find no error and affirm.

FACTUAL AND PROCEDURAL HISTORY

When J.S. was born in August 2016, hospital personnel quickly recognized that he showed signs of drug withdrawal. Both he and his mother tested positive for amphetamines. Mother left the hospital against medical advice while J.S. was still in the neonatal intensive care unit. Armed with a court order, authorities with the Department

1

for Children and Families took J.S. into protective custody. Caseworkers met with O.S. and Mother and identified drug abuse among other issues as obstacles to their getting custody of J.S. Mother submitted to a drug test following the meeting; O.S. refused.

The district court continued J.S.'s placement with the Department and precluded O.S. from having any contact with the child until he complied with the requirement for drug testing. The district court later adjudicated J.S. to be a child in need of care, and caseworkers prepared a family reintegration plan. J.S.'s maternal grandmother had physical custody of him for about five months, but she permitted Mother and O.S. to have unauthorized visits with him. As a result, the Department placed J.S. in foster care.

In October 2017, the State filed a motion to terminate the parental rights of Mother and O.S. Mother died in a motor vehicle collision in January 2018, and the district court continued the termination hearing. The district court heard evidence on the termination of O.S.'s parental rights on March 26 and May 30.

The evidence showed that O.S. never had any authorized visitation or communication with J.S. from the time the Department took the child into custody through the termination hearing—a period of about 22 months. During that time, O.S. was in the Leavenworth County jail on August 21, 2016; from October 12 to October 24, 2016; from April 17 to April 30, 2017; from June 4 through June 22, 2017; and continuously from August 21, 2017 through the termination hearing. The evidence also showed that O.S. never demonstrated to caseworkers that he was gainfully employed or had a suitable residence for himself and J.S. O.S. never submitted to drug testing.

The evidence also showed that a jury sitting in Leavenworth County District Court found O.S. guilty of possession of methamphetamine, a felony, and possession of drug paraphernalia on March 8, 2018. The district court properly took judicial notice of those convictions during the termination hearing. Although O.S. had not been sentenced by

2

May 30, he had a criminal history category of A and faced a presumptive term of imprisonment of between 37 and 42 months. In addition, O.S. still faced felony charges in two other Leavenworth County cases.

On June 22, 2018, the district court issued a written order terminating O.S.'s parental rights to J.S. The district court identified these statutory grounds in finding O.S. to be an unfit parent:

• O.S's use of alcohol or dangerous drugs was of "such duration or nature" that he could not meet the "ongoing physical, mental or emotional needs" of J.S., as provided in K.S.A. 2018 Supp. 38-2269(b)(3).

• O.S.'s conviction of a felony and imprisonment rendered him unfit, as provided in K.S.A. 2018 Supp. 38-2269(b)(5).

• Reasonable efforts of social service agencies had failed to rehabilitate the family and, more particularly, O.S. as J.S.'s father, as provided in K.S.A. 2018 Supp. 38-2269(b)(7).

• O.S. demonstrated a "lack of effort to adjust . . . [his] circumstances" to adequately parent J.S., as provided in K.S.A. 2018 Supp. 38-2269(b)(8).

• Because of O.S.'s conduct, J.S. had been in an out-of-home placement for at least 15 of the preceding 22 months beginning 60 days after the Department took custody of him and one of the factors in K.S.A. 38-2269(c) applied, as provided in K.S.A. 2018 Supp. 38-2269(b)(9).

• J.S. was in an out-of-home placement, and O.S. failed to regularly visit or communicate with J.S. or his custodian, as provided in K.S.A. 2018 Supp. 38-2269(c)(2).

The district court also found that the conditions of unfitness were unlikely to change in the foreseeable future and that J.S.'s best interests would be served by terminating O.S.'s parental rights. O.S. has appealed the termination order.

LEGAL ANALYSIS

On appeal, O.S. challenges the sufficiency of the evidence to support each of the district court's statutory grounds for finding him to be unfit. He does not directly dispute the conclusion that if he were unfit, the unfitness would persist for the foreseeable future or that J.S.'s best interests would be furthered by termination of the parent-child relationship. We take up O.S.'s points after outlining legal principles at play in termination proceedings.

A parent has a constitutionally recognized right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008) (citing *Santosky*). Accordingly, the State may terminate parental rights with respect to a child only upon clear and convincing proof of parental unfitness. K.S.A. 2018 Supp. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

After a child has been adjudicated a child in need of care, a district court may terminate parental rights "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for the child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2018 Supp. 38-2269(a). In considering a parent's unfitness, the district court may apply the factors outlined in K.S.A. 2018 Supp. 38-2269(b), as the court did here. Additional statutory factors apply when a child has been removed from the home, as happened here. See K.S.A. 2018 Supp. 38-2269(c). A single factor may be

4

sufficient to establish unfitness. See K.S.A. 2018 Supp. 38-2269(f). The district court can consider nonstatutory grounds demonstrating parental unfitness. See K.S.A. 2018 Supp. 38-2269(b) (district court "not limited to" listed factors in considering unfitness).

When the sufficiency of the evidence supporting a decision regarding the termination of parental rights is challenged, an appellate court will uphold the decision if, after reviewing the evidence in the record in a light most favorable to the prevailing party, the district court's findings are supported by clear and convincing evidence or, stated another way, the appellate court is persuaded that a rational fact-finder could have found it highly probable that the circumstances warrant the termination of parental rights. *In re B.D.-Y.*, 286 Kan. at 705. In evaluating the record, the appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or determine factual questions. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014).

We need not labor over the record evidence or the district court's legal conclusions in this case. Not to put too fine a point on what's in front of us, O.S. essentially did nothing to comply with the plan the appropriate social service agencies crafted to permit him to obtain custody of J.S. Nor did O.S. in any material way alter his circumstances to meet J.S.'s needs as his son or to facilitate obtaining custody.

O.S. did not secure gainful employment by which he could support himself and J.S. as a family. He did not have a suitable residence. And he otherwise had no meaningful relationship with J.S.—he really had no relationship whatsoever. J.S. was taken into State custody just after he was born. Because O.S. refused to take drug tests (a reasonable requirement given J.S.'s condition at birth and O.S.'s legal difficulties), he was prohibited from visiting J.S. O.S. simply refused to comply. He and J.S. could not have bonded as parent and child under the circumstances.

5

O.S.'s repeated incarceration in the Leavenworth County jail, the last time for about eight months through the termination hearing, thwarted any reasonable agency plans for forging a family unit, especially where there had never been one. Moreover, O.S. had no immediate prospect for release from custody at the time of the termination hearing. He was facing a 40-month prison sentence on a conviction in one case and presumably would be held as a pretrial detainee on the two felony cases yet to be adjudicated.

That evidence more than supports the district court's findings of O.S.'s unfitness under K.S.A. 2018 Supp. 38-2269(b)(7) and (b)(8). Given the extended time involved from J.S.'s birth in August 2016 to the conclusion of the termination hearing in May 2018 and the abject lack of attentiveness of O.S. to any concrete steps to address his unfitness, we consider those grounds alone more than sufficient to justify the district court's legal conclusion. We, likewise, have no trouble with the district court's finding under K.S.A. 2018 Supp. 38-2269(c)(2) that O.S. was unfit because he failed to visit or communicate with J.S. or J.S.'s custodian during the out-of-home placement. O.S. had no authorized visits with J.S. and refused to act to remove the impediment to any visitation.

On appeal, O.S. tries to make much of the failure of his caseworkers to meet with him in the Leavenworth County jail. The argument, however, strikes us as functionally like a bridge to nowhere. O.S. does not satisfactorily explain how those meetings would have materially advanced his ability to attain custody of J.S. He still would have lacked employment and housing and the means to get them. And he didn't take the drug tests or do anything else to satisfy the reintegration plan when he was free. The argument in no way blunts the evidence of unfitness or the district court's findings.

Because those grounds for unfitness are so pronounced, we need not and do not specifically rely on the other statutory grounds the district court cited. Some of the other bases are not necessarily as legally sound. For example, O.S. argues that his conviction

6

for possession of methamphetamine does not, strictly speaking, establish that he then used or now uses illegal drugs. But combined with his consistent refusal to submit to drug testing, the conviction lends circumstantial weight to the conclusion he chronically uses illegal drugs. We have inferred illegal drug use in termination cases based on a parent's deliberate and ongoing avoidance of drug testing. See *In re J.F.*, No. 119,578, 2019 WL 985389, at *3 (Kan. App. 2019) (unpublished opinion); *In re T.E.B.*, No. 119,535, 2018 WL 6253400, at *4 (Kan. App. 2018) (unpublished opinion), *rev. denied* 309 Kan. ___ (March 27, 2019). Similarly, O.S. contends his conviction on the felony drug charge was not final and he had not been sentenced when the termination hearing ended, so the evidence did not support his unfitness under K.S.A. 2018 Supp. 38-2269(b)(5). We suppose that might be correct insofar as O.S. theoretically might have received a dispositional departure to probation and, thus, avoided imprisonment on the conviction. The State has not shown that was a legal impossibility, although the prospect seemed extraordinarily remote based on the evidence presented at the termination hearing.

Rather than prolonging this opinion wallowing in those arguments, we simply put those grounds for finding O.S. unfit to one side in favor of the other statutory bases that were unequivocally proved.

In the interest of completeness, we point out we have no reason to suspect, let alone conclude, those conditions of unfitness would have been alleviated in the foreseeable future. As we have said, O.S. doesn't even argue the point. In gauging the foreseeable future under K.S.A. 2018 Supp. 38-2269(a), the courts should use "child time" as the measure. As the Revised Kansas Code for Care of Children, K.S.A. 2018 Supp. 38-2201 et seq. recognizes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that difference in perception typically tilts toward a prompt, permanent disposition. K.S.A. 2017 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished

7

opinion) ("'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's").

Here, child time takes on particular significance given J.S.'s young age and the nonexistent parental relationship between him and O.S. J.S. had been in State custody about 22 months—his entire life. And O.S. had taken no steps to provide a familial relationship or setting for him. Even assuming O.S. were free of his ongoing criminal problems, those steps likely would have taken months to accomplish, if not longer given the lingering concerns about his drug use. There was ample evidence to support the district court's finding on the unlikelihood of change under K.S.A. 2018 Supp. 38-2269(a).

Likewise, O.S. has not argued that the district court erred in finding J.S.'s best interests were served by termination. That would have been a particularly tough argument to make. As directed by K.S.A. 2018 Supp. 38-2269(g)(1), the district court should give "primary consideration to the physical, mental[,] and emotional health of the child" in making a best interests determination. A district court decides best interests based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1116. The decision essentially rests in the district court's sound judicial discretion. 50 Kan. App. 2d at 1115-16. An appellate court reviews those sorts of conclusions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

In the absence of any preexisting parent-child relationship between O.S. and J.S. and given the duration of the court proceedings, we see no abuse of discretion in the district court's best interests determination. The overall factual circumstances supported

the conclusion J.S. would be better off apart from O.S. Ample evidence supported O.S.'s ongoing unfitness. The district court neither misperceived those circumstances nor misapplied the overall legal framework governing termination. Other district courts readily would have come to the same conclusion.

Affirmed.