NOT DESIGNATED FOR PUBLICATION

No. 122,718

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of D.C.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Cloud District Court; KIM W. CUDNEY, judge. Opinion filed October 30, 2020. Affirmed.

*Katie J. Schroeder*, of Schroeder Law Office LLC, of Beloit, for appellant natural mother.

*Robert A. Walsh*, county attorney, for appellee.

Before ATCHESON, P.J., SCHROEDER and WARNER, JJ.

PER CURIAM: N.C. appeals the order of the Cloud County District Court terminating her right to parent her daughter D.C. On appeal, N.C. argues she was impermissibly denied legal representation during a portion of the case leading up to the termination hearing and the State's evidence at the termination hearing did not support termination. Because N.C. was represented by a lawyer at the termination hearing and the evidence was sufficient, we affirm the district court's order.

FACTUAL AND PROCEDURAL HISTORY

In late April 2019, N.C. left D.C., who was then 12 years old, home alone for a week ostensibly to go to a job training program in Indiana. D.C. was required to use an insulin pump. And the evidence suggests she lacked the skills to fully care for herself.

1

N.C. arranged for a neighbor to check on D.C. Nonetheless, D.C. failed to recharge the pump and suffered a significant diabetic incident requiring her hospitalization. N.C. did not return from her training while D.C. was in the hospital.

D.C. was taken into emergency State custody on May 2, and the county attorney for Cloud County initiated this child in need of care proceeding. The record indicates that W.C., D.C.'s father, lived elsewhere, and we gather he had limited, intermittent contact with the child. The district court also terminated his parental rights, but he is not a party to this appeal.

N.C. hired a lawyer at the outset of this case. Both she and her lawyer appeared at the adjudication hearing in mid-June, when the district court found D.C. to be a child in need of care. In the meantime, N.C. had tested positive for methamphetamine in a test administered by the social service agency designated to prepare and administer a family reintegration plan. N.C. refused to take a drug test the day of the adjudication hearing.

About six weeks after entering an appearance, N.C.'s lawyer filed a motion to withdraw that the district court granted. After that, N.C. did not attend a series of proceedings in this case, including a review hearing, a permanency hearing, and a dispositional hearing. The record indicates N.C. received proper notice by mail of those hearings. In November 2019, the district court scheduled a termination hearing and appointed a lawyer to represent N.C. at the hearing. The appointed lawyer requested and received a continuance of the hearing to February 2020. The lawyer did not ask for any additional time to prepare for the hearing.

The hearing evidence showed N.C. ignored 39 requests from the social service agency for drug testing—all of them that followed the positive test for methamphetamine. N.C. did not provide a urine sample for a drug test the district court ordered at the termination hearing. So N.C. had 1 positive test, 39 no-shows with the agency, and what

2

amounts to 2 refusals at court hearings. Under those circumstances, a court may fairly treat the refusals and no-shows as evidence N.C. reasonably believed she would have tested positive. See *In re J.A.H.*, 285 Kan. 375, 388, 172 P.3d 1 (2007) (parent's positive test for methamphetamine coupled with refusal of further testing supported child in need of care finding); *In re I.G.*, No. 122,009, 2020 WL 2296918 at *4-5 (Kan. App. 2020) (unpublished opinion) (evasion or circumvention of drug testing supported finding of parental unfitness); *In re J.F.*, No. 119,578, 2019 WL 985389, at *3 (Kan. App. 2019) (positive drug test and test refusals supported finding of unfitness).

N.C. represented the testing appointments conflicted with her work schedule, but she never verified her employment by presenting paystubs or other evidence to the social service agency or at the termination hearing. The social service agency would not schedule visits between N.C. and D.C. without negative drug tests. As a result of N.C.'s refusal to test, she had no communication or visits with D.C. between May 2019 and February 2020. The social service agency was never able to inspect and verify suitability of N.C.'s residence. And nothing in the record established that N.C. fully understood the attention and monitoring D.C. required because of her health issues.

In its journal entry following the termination hearing, the district court found N.C. unfit based on multiple factors in K.S.A. 2019 Supp. 38-2269(b) and (c): (1) N.C.'s use of drugs rendered her unable to care for D.C.; (2) the failure of reasonable efforts by the social service agency to rehabilitate the family; (3) N.C.'s failure to adjust her circumstances, conduct, or conditions to meet the needs of D.C.; (4) N.C.'s failure to carry out a reasonable plan for reintegration; and (5) D.C.'s failure to maintain regular visitation and contact with D.C. Those factors tend to overlap and principally tie into N.C.'s drug use and the consequences of that use and her ongoing failure to cooperate in drug testing. The hearing evidence also showed that N.C. did very little else to meet the objectives of the family reintegration plan. The district court found N.C.'s unfitness was unlikely to change in foreseeable future and D.C.'s best interests would be served by

3

termination of both N.C.'s and W.C.'s parental rights. N.C. has appealed the termination order.

LEGAL ANALYSIS

*Lack of Legal Representation*

For her principal point on appeal, N.C. argues the district court's failure to appoint a lawyer to represent her after her retained lawyer was permitted to withdraw violated both her constitutional and statutory rights. We find no basis to reverse the termination order, since N.C. was represented by a lawyer leading up to and during that hearing.

We turn first to a parent's statutory right to legal representation in child in need of care proceedings. As provided in K.S.A. 2019 Supp. 38-2205(b)(1), a parent has the right to appear with a lawyer and for court appointment of a lawyer if he or she is unable to afford legal representation. The latter, however, is a qualified right, since a parent must ask the district court to appoint a lawyer. K.S.A. 2019 Supp. 38-2205(b)(1) ("If . . . a parent *desires* but is financially unable to employ an attorney, the court shall appoint an attorney for the parent.") (Emphasis added.) Parents are informed of that option at the outset of child in need of care cases, and that appears to have been done here. The district court, however, is not obligated to appoint a lawyer to represent a parent who has been given notice of a hearing and fails to attend. K.S.A. 2019 Supp. 38-2205(b)(1). But a district court must appoint a lawyer for a parent for a termination hearing, even if the parent is in default and has not appeared. K.S.A. 2019 Supp. 38-2267(d).

The record here indicates the district court complied with the statutory requirements, especially given N.C.'s failure to appear at the various proceedings leading up to the termination hearing. Nothing shows N.C. formally or informally requested an appointed lawyer.

The United States Supreme Court has recognized that persons facing the termination of their parental rights in a judicial action have a conditional right to appointed legal representation if they cannot afford to hire a lawyer. *Lassiter v. Department of Social Servs. of Durham Cty.*, 452 U.S. 18, 31-32, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981). The *Lassiter* Court adopted the case-by-case standard it had fashioned for requiring appointed representation in probation revocation hearings in *Gagnon v. Scarpelli*, 411 U.S. 778, 790-91, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). See *In re L.B.*, 42 Kan. App. 2d 837, 840-41, 217 P.3d 1004 (2009) (noting *Lassiter* and constitutional right to counsel); *In re D.R.*, No. 119,119, 2018 WL 5851604 at *6 (Kan. App. 2018) (unpublished opinion) (noting case-by-case standard in *Lassiter*). We recently described the right to legal representation recognized in *Gagnon* this way:

> "In *Gagnon*, the Court concluded that the circumstances of a given case would dictate whether a probationer had a due process right to appear at a revocation hearing with a lawyer. The Court suggested probationers would presumptively be entitled to legal representation if they offered either 'colorable claim[s]' the factual grounds for the revocation were wrong or compelling mitigating circumstances weighing against revocation notwithstanding proved violations, especially if those circumstances could be considered 'complex or otherwise difficult to develop.' And the Court invited the adjudicating authority to take into account the ability of a given probationer to effectively speak on his or her own behalf, particularly in a 'doubtful' case." *State v. Gonzalez*, 57 Kan. App. 2d 618, 624, 457 P.3d 938 (2019).

In short, N.C. may have had a constitutional right to an appointed lawyer in this case. But the district court never engaged in the case specific analysis required in *Lassiter* to make that determination.

We, therefore, make a pair of assumptions in addressing N.C.'s appellate argument. First, we assume N.C.'s failure to request an appointed lawyer did not amount to a forfeiture of her constitutional right. Second, we assume the circumstances of this

case were such that N.C. would have been substantially disadvantaged in representing herself leading up to and at the termination hearing. See *Gonzalez*, 57 Kan. App. 2d at 625 n.1. We, therefore, assume without deciding that N.C. was constitutionally entitled to an appointed lawyer at the point the district court allowed her retained lawyer to withdraw.

N.C. argues this issue as if her lack of legal representation at the sequential proceedings leading up to the termination hearing categorically creates an error requiring reversal of the termination order. But that is mistaken. Even constitutional errors are subject to review for harmlessness. Here, N.C. would have to show some sort of actual prejudice that deprived her of a fundamentally fair termination hearing despite being represented by a lawyer then. N.C. has made no such showing. Accordingly, we find no factual or legal basis to set aside the termination order because N.C. was without legal representation between June and November 2019.

*Sufficiency of the Evidence*

N.C. makes a condensed argument on appeal that the evidence presented at the termination hearing did not support the district court's finding of unfitness or that termination would be in D.C.'s best interests. She does not specifically dispute the district court's finding that her unfitness would be unlikely to change in the foreseeable future. We begin our assessment of this issue with an outline of the core legal principles governing termination proceedings under the Revised Kansas Code for Care of Children, K.S.A. 2019 Supp. 38-2201 et seq.

A person has a constitutionally recognized right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008) (citing *Santosky*). The right is a constitutionally protected liberty interest. See *Troxel v. Granville*, 530 U.S.

6

57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (substantive liberty interest); *Pierce v. Society of the Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) (recognizing "the liberty of parents and guardians to direct the upbringing and education of children under their control"). Accordingly, the State may extinguish the legal bond between a parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 2019 Supp. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

After a child has been adjudicated in need of care, a district court may terminate parental rights "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for the child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2019 Supp. 38-2269(a). In considering a parent's unfitness, the district court may apply the factors outlined in K.S.A. 2019 Supp. 38-2269(b) and, when the child has been removed from the home, the additional factors in K.S.A. 2019 Supp. 38-2269(c). In this case, the district court drew from both of those sources to find N.C. unfit. A single factor may be sufficient to establish unfitness. See K.S.A. 2019 Supp. 38-2269(f).

In the interests of completeness, we mention that when gauging the likelihood of change in the foreseeable future under K.S.A. 2019 Supp. 38-2269(a) the courts should use "child time" as the measure. As the Code recognizes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that difference in perception typically tilts toward a prompt, permanent disposition. K.S.A. 2019 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's").

When the sufficiency of the evidence supporting a decision to terminate parental rights is challenged, an appellate court will uphold the decision if, after reviewing the record evidence in a light most favorable to the State as the prevailing party, the district court's findings on unfitness and foreseeability of change are supported by clear and convincing evidence. Stated another way, the appellate court must be persuaded that a rational fact-finder could have found it highly probable that the circumstances warrant the termination of parental rights. *In re B.D.-Y.*, 286 Kan. at 705. In evaluating the record, the appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or determine factual questions. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014).

The district court's best interests determination is governed by a less stringent standard. As directed by K.S.A. 2019 Supp. 38-2269(g)(1), the district court should give "primary consideration to the physical, mental[,] and emotional health of the child" in making a best interests finding. A district court decides best interests based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1115-16. The decision essentially rests in the district court's sound judicial discretion. 50 Kan. App. 2d at 1116. An appellate court reviews those sorts of conclusions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

N.C. offers a broad challenge to the evidence, arguing she had complied with some of the objectives for family reintegration. But she fails to delineate specific shortcomings in the State's evidence or faults in the district court's findings on the grounds of unfitness.

Under the appellate standard of review, we find sufficient evidence to support the district court's conclusion. The evidence can and should be taken to show that N.C. had an ongoing substance abuse problem, with methamphetamine being a drug of choice. N.C.'s chronic avoidance of drug testing following her positive test should be viewed as substantial circumstantial evidence of a continuing problem and an inability to even acknowledge the problem. In turn, N.C. had no visits or other significant communication with D.C. for about eight months because she would not comply with the drug testing protocols. That demonstrates an inability and unwillingness on N.C.'s part to adjust her circumstances to meet the needs of D.C., one of the statutory grounds for unfitness. K.S.A. 2019 Supp. 38-2269(b)(8). The lack of contact and communication with D.C. is itself another ground for unfitness. K.S.A. 2019 Supp. 38-2269(c)(2). N.C.'s dismal performance in those respects illustrates the failure of an otherwise reasonable family reintegration plan. K.S.A. 2019 Supp. 38-2269(b)(7).

Although N.C. hasn't disputed that the circumstances were unlikely to change in the foreseeable future, her ongoing refusal to acknowledge, confront, and deal with an apparent drug problem supports the district court's finding. She would have had to make significant strides with her substance abuse issues to avoid an unfitness finding. Here, after nine months, she had not even acknowledged a problem, casting an exceptionally dim light on the prospects for some measured success anytime in the foreseeable future.

Finally, the district court's best interests determination does not display an abuse of judicial discretion. N.C. does not suggest the district court misunderstood the evidence or misapplied the law. She submits "little evidence" supported the conclusion, presumably meaning no other district court would have ruled in the same way. We disagree.

N.C. initially left D.C. in an unsafe situation in light of the child's serious diabetes and need for carefully monitored treatment. That poor judgment and neglect placed D.C.

9

in a precarious situation, necessitating her hospitalization and prompting the State's intervention. After N.C. tested positive for methamphetamine, she effectively abandoned D.C. when she refused to make any real effort to comply with the testing protocols—a necessary step to visiting and otherwise communicating with the child. Given the duration of that abandonment, we believe other district courts would have weighed the competing considerations of termination in the same way and come to the same best interests determination.

Affirmed.