NOT DESIGNATED FOR PUBLICATION

Nos. 124,934
124,935
124,936

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of
A.C., C.C., and A.C.,
Minor Children.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; GREGORY D. KEITH, judge. Opinion filed September 2, 2022. Affirmed.

*Anna M. Jumpponen*, of AJ Law, L.L.C., of Wichita, for appellant natural mother.

*Julie A. Koon*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before HURST, P.J., HILL and ATCHESON, JJ.

PER CURIAM: J.C. has appealed the order of the Sedgwick County District Court terminating her right to parent her three children and challenges the sufficiency of the evidence supporting the ruling. The State presented evidence J.C. continued to abuse illegal drugs, failed to undertake significant tasks in a plan for family reunification, and was without gainful employment at the time of the termination hearing. J.C. principally attempted to counter that unflattering portrait through her own uncorroborated testimony. The district court, however, explicitly branded J.C. as unworthy of belief. Given those circumstances and the governing standards of review we must apply, we find no basis to upset the district court's ultimate conclusion and, therefore, affirm the termination of J.C.'s parental rights.

1

J.C. and her husband C.C. had three children: daughters A.H.C., who is now almost 13 years old, and A.S.C., who is about 4 and 1/2 years old; and a son C.M.C., who is almost 12 years old. St. Francis Ministries, a social service agency that contracts with the Kansas Department for Children and Families, had been providing assistance to the family in addressing the parents' substance abuse problems and their recurrent domestic violence, including incidents in which C.C. struck J.C. in the presence of the children. The two older children also had frequent unexcused absences from school.

Because the home environment had not appreciably improved by April 2019, the State filed petitions to have A.H.C., C.M.C., and A.S.C. declared children in need of care. The cases were joined in the district court for all proceedings and have remained consolidated for this appeal. J.C. and C.C. did not contest the determination the children were in need of care or their placements out of the home through DCF, as the state agency assuming legal custody of them. St. Francis Ministries implemented a detailed plan designed to reunite the family. The plan required the parents to take steps to eliminate the deleterious conditions that prompted state intervention, to improve their parenting skills, and to provide adequate housing and financial support for the children. Those objectives formalized in these legal proceedings what St. Francis Ministries had been trying to accomplish before April 2019.

Because J.C. and C.C. continued to make little tangible progress toward family reunification, the State filed motions in October 2019 to terminate their parental rights to all three children. At some point, C.C. was jailed for a probation violation and new felony charges. He remained in custody for the duration of the district court proceedings, although he participated personally and through an appointed lawyer in all pertinent hearings.

The district court began the termination hearing in January 2020 and ruled J.C. and C.C. were presently unfit to parent the children. See K.S.A. 38-2269(a) (termination requires finding parent "is unfit" and "condition is unlikely to change in the foreseeable future"). The district court continued the hearing to consider whether the unfitness would likely change and to assess the best interests of the children. See K.S.A. 38-2269(g)(1) (best interests determination required before terminating parental rights). For reasons that are neither especially relevant to this appeal nor immediately apparent from the record, the district court did not resume the termination hearing until June 2021—some 18 months later.

Several caseworkers from St. Francis Ministries, J.C., and C.C. testified at the resumed hearing, and the district court admitted numerous reports and other documents as evidence. The record shows J.C. tested negative for controlled substances many times after January 2020—a marked improvement from her repeated test failures and test evasions earlier in these proceedings. But J.C. tested positive for methamphetamine in January 2020, September 2020, and May 2021. She also tested positive for marijuana in February, June, and September of 2020. Methamphetamine is an especially addictive and pernicious illegal drug. During the June 2021 hearing, J.C. dismissed all of those results as false positives and asserted she had retested for at least some of them with favorable results. She offered no evidence corroborating her assertions.

Because of the positive drug tests, a caseworker told J.C. she needed to get a follow-up substance abuse evaluation. J.C. told the agency she had done so but never provided confirmation of her claim. One of the caseworkers testified that given J.C.'s substance abuse history, she would need to present negative drug tests for a year before family reintegration realistically could be considered. Similarly, J.C.'s visits with the children were limited to relatively short, supervised contacts because of the positive drug tests. J.C. was never able to progress to extended, unsupervised visits, a typical precursor

3

to an agency recommendation for family reunification. J.C. also failed to attend about 30 percent of the scheduled visits with her children after January 2020.

The reunification plan called for J.C. to participate in individual counseling. J.C. did not do so over the course of the case. At the June 2021 hearing, she testified she had started individual counseling a few weeks earlier and offered varied excuses for having put it off. Again, J.C. provided no evidence corroborating her claim to have begun counseling. More generally, the caseworkers testified they found J.C. to be difficult to reach at times and often unresponsive to requests for information. The children were to receive counseling, as well.

J.C. had housing after January 2020 the caseworkers considered suitable for the children, and she a job at a fast-food restaurant for quite a while. But J.C. apparently lost the job about a month before the reconvened termination hearing. The circumstances as to why are less than clear from the record, especially given the district court's credibility findings. J.C., however, testified that she would be able to return to work at the restaurant and, in any event, had a line on another job.

At the June 2021 hearing, a caseworker testified that the agency was concerned that J.C. would resume living with C.C. when he was no longer incarcerated—creating a situation ripe for a return to drug abuse and physical violence. J.C. testified that she intended to divorce C.C. and had recently begun steps to do so. Again, she provided nothing to corroborate her assertion.

The record shows that the two girls had been placed together and were doing well. C.M.C. had been separately placed in successive out-of-home arrangements with some difficulties. C.M.C. regularly acted out and could be difficult to manage. And one placement failed to take him for individual counseling for several months, despite a plan requirement he receive that help. One of the caseworkers agreed that it would be difficult

4

to find a single permanent placement for all three children and C.M.C. likely would continue to be separated from his sisters.

In early July 2021, the district court entered an order terminating the rights of J.C. and C.C. to parent all three children. The district court based its decision on four statutory grounds of unfitness and determined those conditions were unlikely to change in the foreseeable future. The district court also concluded the best interests of the children favored termination. In the order, the district court expressly found J.C. "is not a credible witness."

J.C has appealed the termination order. C.C. has not, and he is not a party to this appeal. After J.C. filed her appellate brief, the district court entered a nunc pro tunc order substituting a new ground of unfitness for one incorrectly identified in the July 2021 order. That creates a procedural wrinkle we address in our analysis of the issues on appeal.

LEGAL ANALYSIS

We begin with an outline of the legal principles governing the termination of parental rights and then apply those principles to the evidence and findings from the district court.

*Governing Legal Principles*

A person has a constitutionally recognized right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008) (citing *Santosky*). The right is a constitutionally protected liberty interest. See *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (substantive liberty

interest); *Pierce v. Society of the Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) (recognizing "the liberty of parents and guardians to direct the upbringing and education of children under their control"). Accordingly, the State may extinguish the legal bond between a parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014). The Legislature has enacted the Revised Kansas Code for Care of Children, K.S.A. 38-2201 et seq., to codify processes for finding children in need of care, for fostering family reunification, and for terminating parental rights if those efforts fail.

After a child has been adjudicated in need of care, a district court may terminate parental rights "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for the child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 38-2269(a). In considering a parent's unfitness, the district court may apply the factors outlined in K.S.A. 38-2269(b) and, when the child has been removed from the home, the additional factors in K.S.A. 38-2269(c). In this case, the district court drew from both of those sources to find J.C. unfit. A single factor may be sufficient to establish unfitness. See K.S.A. 38-2269(f).

In gauging the likelihood of change in the foreseeable future under K.S.A. 38-2269(a), the courts should use "child time" as the measure. As the Code recognizes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that difference in perception typically tilts toward a prompt, permanent disposition. K.S.A. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in termination of parental rights proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's").

6

When the sufficiency of the evidence supporting a decision to terminate parental rights is challenged, an appellate court will uphold the decision if, after reviewing the record evidence in a light most favorable to the State as the prevailing party, the district court's findings on unfitness and foreseeability of change are supported by clear and convincing evidence. Stated another way, the appellate court must be persuaded that a rational fact-finder could have found it highly probable that the circumstances warrant the termination of parental rights. *In re B.D.-Y.*, 286 Kan. at 705. In evaluating the record, the appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or determine factual questions. *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014).

The district court's best interests determination is governed by a less stringent standard. As directed by K.S.A. 38-2269(g)(1), the district court should give "primary consideration to the physical, mental[,] and emotional health of the child" in making a best interests finding. A district court decides best interests based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1115-16. The decision essentially rests in the district court's sound judicial discretion. 50 Kan. App. 2d at 1116. An appellate court reviews those sorts of conclusions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *In re M.S.*, 56 Kan. App. 2d 1247, 1264, 447 P.3d 994 (2019).

*Legal Principles Applied*

In the July 2021 order, the district court found J.C. to be unfit for these statutory reasons identified in K.S.A. 38-2269(b):

• "[T]he use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child." K.S.A. 38-2269(b)(3);

• Reasonable efforts made by public or private agencies to rehabilitate the family have failed. K.S.A. 38-2269(b)(7); and

• A "lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child." K.S.A. 38-2269(b)(8).

In addition, the district court listed K.S.A. 38-2269(c)(2) that permits a finding of unfitness based on a parent's failure to maintain regular visits or communication with a child who has been in an out-of-home placement for at least 15 of the last 22 months. As we have stated, the district court corrected that ground in a nunc pro tunc order to K.S.A. 38-2269(c)(3) applicable when a parent fails "to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home" while the child has been in an extended out-of-home placement. Although the new ground is substantively much like the one in K.S.A. 38-2269(b)(7) and there is no dispute the children had been out of the home for more than two years, we decline to consider this reason for termination. We do so based on a sense of procedural fairness to J.C. because the district court did not formally identify that basis for unfitness until after the appellate briefing had begun. As a result, J.C. did not have an entirely full and fair opportunity to address the specific point on appeal.

We turn to the statutory bases for unfitness the district court identified under K.S.A. 38-2269(b); they tend to overlap, so we look at them together. And we must accept the district court's determination that J.C.'s testimony lacked credibility. We do so because appellate courts are in no position to recreate the power or the fragility of a witness' live testimony from a review of a transcript. See *State v. Scaife*, 286 Kan. 614, 624, 186 P.3d 755 (2008) ("[T]he ability to observe the declarant is an important factor in determining whether he or she is being truthful.").

8

The evidence, then, shows that J.C. continued to test positive for methamphetamine and marijuana on a relatively regular basis leading up to the conclusion of the termination hearing. The district court could properly view her dissembling about false positive tests to be indicative of denial and deflection of her continuing active drug abuse. J.C.'s failure to document that she had gotten the drug evaluation St. Francis Ministries required falls in the same category. Active abuse of a drug like methamphetamine requires the user to traffic and, in turn, to invite arrest and prosecution for a serious felony.

The district court had sufficient evidence to find that J.C. continued abusing drugs, particularly methamphetamine, and that conduct rendered her presently incapable of caring for her children. The prospects for change in the foreseeable future were dim, given J.C.'s refusal to acknowledge the accuracy of the positive tests and her recalcitrance to undergo a substance abuse evaluation, let alone some form of treatment or counseling that might then be recommended.

The positive drug tests, in turn, inhibited J.C.'s ability to expand visitation with the children. Coupled with her refusal to take steps to deal with her substance abuse issues and to engage in individual mental health counseling, those circumstances created a constellation of factors defining a failure of reasonable efforts by St. Francis Ministries toward reunification of the family, supporting unfitness under K.S.A. 38-2269(b)(7). Again, the prospects for change seemed limited, especially given J.C.'s unwillingness to acknowledge the problems and, instead, ponying up excuses the district court found to be untrue.

All of that also informs the third ground for termination—J.C.'s lack of effort to adjust her conduct to meet the children's needs and, in particular, to accomplish the tasks necessary for family reunification. Most prominently here, too, we focus on J.C.'s unwillingness to acknowledge the more recent positive drug tests and to act in

9

accordance with those results rather than ineffectively trying to dismiss them as erroneous across the board. We add in J.C.'s unsatisfactorily explained departure from her job just a month before the termination hearing, leaving her without the financial means to support the children. The district court, as we have said, found her ameliorative explanations of future employment to be unworthy of belief. Finally, J.C. purported to have begun steps to divorce C.C. shortly before the reconvened termination hearing. But she could not support that claim and had not acted sooner to shield herself or the children from C.C.'s abusive behavior in any tangible way, such as by seeking a protection from abuse order. A reasonable fact-finder could conclude it was highly probable J.C. was unfit under K.S.A. 38-2269(b)(8) based on her failure to make those changes. Likewise, J.C.'s refusal to take significant positive steps during the two years these cases were proceeding in the district court supports the interlocking conclusion that she would not suddenly reverse course in the foreseeable future.

In sum, the clear and convincing evidence established J.C. to be unfit under K.S.A. 38-2269(b)(3), (7), and (8) and that those conditions of unfitness likely would not change in the foreseeable future. The child time rule bolsters the latter determination, especially as to A.S.C., who is yet to turn five years old and has been in an out-of-home placement most of her life. But child time also directs that A.H.C. and C.M.C. should not have had to wait for J.C. to go a year with only negative drug tests before reunification would be considered even a possibility. The record afforded no sound basis to conclude that might happen anytime soon. The district court, then, had more than enough evidence to support the conclusions of unfitness and unlikelihood of change in the foreseeable future.

The remaining component for termination is a determination that the best interests of the children would be furthered by extinguishing J.C.'s parental rights. Our review is exceedingly deferential to the district court. Here, the district court understood the relevant facts and the governing law. Accordingly, we are left to ask whether the district

10

court's weighing of those considerations was so off kilter that no other judge could reasonably come to the same conclusion. We are comfortable that cannot be said.

The best interests determination necessarily dovetails with the unfitness findings, since the degree and duration of parental unfitness go on the side of the ledger favoring termination while the negative effects of termination on the children rest on the other side. Here, the children had been exposed to significantly deleterious conditions and behaviors in the home. Two years later, J.C. had not made the necessary progress to alleviate those problems and offered no demonstrable prospect for success far down the line, let alone on the immediate horizon.

Those circumstances would leave the children in bureaucratic limbo without any tangible expectations for permanency—whether that would be an adoptive placement or a return to J.C. The principal consideration cutting against termination as being in the children's best interests was the very real possibility they could not find a single permanent placement accommodating all three of them. Separating siblings, as may happen with the termination of J.C.'s parental rights, is an undeniably adverse result to be avoided if reasonably possible. Here, however, it is not an inevitable outcome. And the district court determined the continued uncertainty for the children in extending these proceedings while J.C. continued to make, at best, nominal progress toward restoration of the family imposed a greater emotional toll on them than cutting off their parents' rights. We find no abuse of the broad discretion afforded the district court in coming to that conclusion.

Affirmed.